## In re HOPPER–MORGAN CO.

(District Court, N. D. New York. October 28, 1907.)

BANKRUPTCY—PROVABLE CLAIMS—FRAUDULENT NOTES OF CORPORATION.

A holder of notes of a bankrupt corporation fraudulently executed by its treasurer without authority or consideration, and which had at once been diverted from the purpose for which they were delivered, *held* to have failed to sustain the burden of proof resting upon him to show that he was a bona fide purchaser for value to entitle him to their allowance as debts of the estate in bankruptcy.

Review of decision of referee in bankruptcy disallowing the claim of W. Clarke Smith upon two notes purporting to be made by the

Hopper-Morgan Company by Roger Morgan, treasurer, one for $5,000 and the other for $2,500.

See 154 Fed. 249.

E. M. Schwarzenberg, for claimant.
Brown, Carlisle & McCartin, for trustee.

RAY, District Judge. The claimant, W. Clarke Smith, presented his claim against the bankrupt estate upon two notes, one dated April 4, 1905, payable four months from date, for $5,000, and the other, dated June 7, 1905, payable four months from date, for $2,500. The Hopper-Morgan Company is a corporation of the state of New York, and prior to its bankruptcy was engaged in the business of manufacturing, etc. The notes in question, with many others of the same character, were made and issued by Roger Morgan, the treasurer of the company, without authority of the company, and not in its business, for the accommodation of an alleged corporation, the Emerson Manufacturing Company. They were placed in the hands of one Trautwine by Morgan under an agreement between them that they should be used as collateral security only, and taken up and returned to Morgan before maturity, so as not to become a charge on the company. The $5,000 note was dated April 4, 1905, and was one of a number of notes aggregating $50,000 issued by Morgan under the agreement and for the purpose stated. March 29, 1905, Morgan had issued another batch of notes, without authority, for the same purpose and under a like agreement. The $2,500 note was issued by Morgan under an agreement that it was to be used for the purpose of renewing the note of like amount of one or the other of the issues above mentioned. Both of these notes were fraudulently diverted from the purpose for which issued in the very beginning, and found their way into the market. These notes came into the hands of the claimant at a time when a large number of the notes of this company of these issues were being hawked about Boston and possibly elsewhere.

As these notes were fraudulently issued without the knowledge of the company, and not in its business, and without consideration, and were at once fraudulently diverted from the purpose for which issued by the treasurer, and as these facts fully appeared, the burden of proof was thrown upon Smith, the claimant, to show when and how he became the owner of the notes, and to show that he became the holder thereof in good faith and for value, or that he took same from some person who had acquired them in good faith and for value. This burden was upon the claimant, and he undertook to discharge this burden of proof. The claimant says, in substance, that he purchased the note of $2,500 on or about June 13, 1905, of one Frank L. Wheeler for $2,000. He says Wheeler owed him $500 and that he canceled this indebtedness, and gave Wheeler his own promissory notes for $500, $500 and $250, respectively, and that he paid the balance by check on the State Street Trust Company of Boston, where he had an account. He claims that he subsequently paid these promissory notes. The $5,-000 note he says he purchased of Wheeler July 13, 1905, and that he gave in payment therefor an automobile which was called worth $3,-

000, and his two promissory notes for $500 and $700, respectively. He says that he subsequently paid these notes.

Considerable evidence was taken before the referee, and he had an opportunity to see the witnesses and judge of their credibility. Taking Smith's evidence all together, and assuming it to be true, he only gave $3,200 for the $5,000 note. Smith had knowledge that quite a large number of these Hopper-Morgan notes were out, and that they were being traded off and hawked about at a very large discount. On reading the entire evidence, including Smith's own testimony, I cannot bring myself to believe that, in fact, Smith ever owned either of the notes in question. I think the party from whom Smith obtained the notes had knowledge that there was something wrong about them, that they were not regularly issued, and that Smith was used and permitted himself to be used in the transactions relating thereto for the purpose of making the claim that he was a purchaser for value and a holder in good faith. To go through with the evidence in detail and recite the facts and circumstances leading to this conclusion would be wearisome and unprofitable. This is my irresistible conclusion. The claimant has not shown himself a purchaser and holder of these notes in good faith. He was associated with and aiding those who were hawking about and dickering in these notes.

Persons who purchase commercial paper in the regular course of business for value, and without knowledge of any infirmity in the paper, are entitled to protection. To my mind in this case there are too many badges of bad faith for a court to hold that the claimant was a holder in good faith, or for value actually parted with. Smith's dealing in automobiles and in these notes, and giving his own notes to Wheeler and their close association in this and other transactions under all the evidence, so far discredited the testimony of the claimant that in my judgment the referee was fully justified in holding that the claimant was not a holder of the notes in question in good faith. The large discounts made on these notes, even if Smith did take them in the way of trade for some purpose, are indications of bad faith.

I hold with the referee that the claimant did not discharge the burden of proof cast upon him; and the order disallowing the claim is therefore affirmed.