(174 App. Div. 136)

## JOHNSON COUNTY SAVINGS BANK v. KORNHAUSER.

(Supreme Court, Appellate Division, Second Department.   October 6, 1916.)

1. BILLS AND NOTES ☞520—ACCEPTANCES—FRAUD—EVIDENCE.

Evidence *held* to sustain finding that defendant was induced to sign acceptances sued on by active fraud and deceit, and to sustain verdict for defendant therefor.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1813, 1832, 1836, 1837; Dec. Dig. ☞520.]

2. BILLS AND NOTES ⬤⇒497(5)—BONA FIDES—BURDEN OF PROOF.
   After proof of initial fraud in procuring acceptances, the burden is on the holder to show that it took the drafts as an innocent bona fide holder.

   [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1683–1685, 1687; Dec. Dig. ⬤⇒497(5).]

3. BILLS AND NOTES ⬤⇒537(6)—BONA FIDES—EVIDENCE.
   The statement of the president of the holder bank that it took drafts in bona fides as innocent purchaser is not conclusive of such fact, but such issue is for the jury if circumstances render such testimony improbable.

   [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 1879; Dec. Dig. ⬤⇒537(6).]

Appeal from Westchester County Court.

Action by the Johnson County Savings Bank against Lewis Kornhauser. From judgment for defendant and order denying motion for new trial, plaintiff appeals. Affirmed.

On February 7, 1914, this action was begun against defendant on an acceptance of a draft which had been drawn by the United Jewelers Manufacturing Company of Iowa City, Iowa, and accepted by him on February 23, 1907, payable in twelve months. Defendant kept a small shop in the village of Peekskill, and could read but little English. On February 6th, 1907, a salesman from this jewelry concern visited defendant's store, and invited him to engage in the sale of this jewelry on the basis of a 20% commission, besides receiving the benefit of certain local advertising at the expense of this jewelry company. Finally he produced a long, closely printed contract (which defendant could not read), being in form an order for jewelry to be shipped to him at Peekskill to the amount of $756, to be paid one-fourth each three months. The instrument contained a guaranty that the gross profits should be not less than 50 per cent. of the amount of this order, each year, for a period of two years from the date of invoice. The soliciting agent assured defendant that if he did not succeed in selling, defendant would not lose, as at the end of the year the jewelry company would pay him storage upon the goods unsold. Defendant signed this paper after hearing it read.

On February 23d, a tall, well-dressed stranger came to defendant's store, seemingly in a great hurry. He announced that defendant's shipment was at the local express office, but before its delivery defendant must first sign the four yellow papers which he produced, being four drafts, each for $189, payable in 3, 6, 9, and 12 months. The last is the one here in suit. It does not clearly appear whether the word "accepted" had then been written, but defendant's signature on the back is admitted to be genuine. The stranger repeated that the goods were sent on commission, that these papers were merely to be held as collateral security, and that at the end of every quarter defendant was to remit the proceeds of whatever he had then sold, less 20 per cent. commissions, whereupon the draft then falling due should be returned to him. On that same day, defendant received a box about 18 inches square from the express company. When, the following day, the glittering articles were exposed in the show cases, they soon lost their luster. After trying to wipe off one that appeared tarnished, defendant discovered their true character, and at once put them back, and on that day returned by express the entire lot to the United Jewelers Manufacturing Company. About the middle of May, defendant received from the Johnson County Savings Bank, also an institution of Iowa City, a letter, in which that bank claimed to be the holder of the draft then maturing, with demand for remittance payable at Iowa City. Through his attorney, defendant wrote back repudiating any liability. Later came notice of protest, and like demands and protests on the three succeeding drafts followed, including the one for 12 months here in suit.

It appeared that suits had been instituted on the three drafts which came due in 1907, but that after having been at issue, the complaints were finally dismissed.

Plaintiff's proofs from Iowa City were taken by commission under section 888 of the Code of Civil Procedure. It was deposed that the draft in suit had been transferred on March 19, 1907, to plaintiff for its face value, less a discount of 7 per cent. The assistant manager of the jewelry company deposed in denial of having communicated any information to the bank as to the consideration for this draft. The president of the plaintiff bank denied knowledge from any source as to the original transaction with defendant or as to the consideration for this acceptance.

The issues, including plaintiff's disclaimer of knowledge or information and as to plaintiff's bona fides, were submitted to the jury, who gave a verdict for defendant, which the learned county judge declined to set aside. This appeal is from the judgment and the order denying new trial.

Argued before JENKS, P. J., and THOMAS, CARR, STAPLETON, and PUTNAM, JJ.

Omar Powell, of New York City, for appellant.

James Dempsey, of Peekskill, for respondent.

PER CURIAM. [1-3] From all the circumstances attending defendant's signing this jewelry order, showing a tissue of misrepresentations practised on an illiterate foreigner, the jury could well find that defendant, without his fault or neglect, was induced to sign these acceptances by active fraud and deceit. Page v. Krekey, 137 N. Y. 307, 33 N. E. 311, 21 L. R. A. 409, 33 Am. St. Rep. 731. On proof of such initial fraud, plaintiff had to satisfy the jury that the bank took the draft as an innocent bona fide holder. Vosburgh v. Diefendorf, 119 N. Y. 357, 23 N. E. 801, 16 Am. St. Rep. 836; Smith v. Weston, 159 N. Y. 194, 198, 199, 54 N. E. 38. This issue was not to be determined alone on the statements of the assistant manager of the jewelry company in unison with the testimony of the bank president, to the effect that the bank was ignorant of the original consideration. The jury might take such testimony with some reserve, and if it looked improbable that a bank in the same town with this jewelry company took such irregular paper in entire ignorance of its customers' methods of trade, it was for the jury to say how far they credited such disclaimer of knowledge involving a lack of ordinary banking precautions. C. N. Bank v. Diefendorf, 123 N. Y. 191, 25 N. E. 402, 10 L. R. A. 676; Citizens' National Bank v. Weston, 162 N. Y. 113, 118, 56 N. E. 494.

In view of the scheme of fraud perpetrated on respondent, and the presumptive knowledge growing out of the relations between the fraudulent drawer and the plaintiff, we cannot say that this verdict in favor of the defendant was unsupported.

The judgment and order of the county court of Westchester county are therefore affirmed, with costs.