## THE FIRST NATIONAL BANK OF PHILLIPS v. R. D. DENFELD.[1]

July 18, 1919.

No. 21,241.

**Evidence of fraud in inception of note.**

1. The evidence sustains the finding that the note in suit was obtained from defendant by fraud.

**Evidence required of plaintiff to recover.**

2. This being shown it devolved on plaintiff to prove that it was a bona fide holder, in due course, for value, and without notice of the fraud. The jury's finding that plaintiff did not prove itself such holder is sustained.

**Bills and notes — title defective.**

3. The promissory note sued on was obtained from defendant by fraudulently misrepresenting the financial standing of a corporation whose bonds were to be issued in exchange for the note. This is *held* to make the title of the payee who thus procured the instrument defective. Negotiable Instruments Law, G. S. 1913, § 5867.

**Same — estoppel against defendant.**

4. The record does not show plaintiff entitled to a directed verdict on the ground of estoppel.

**Same — bona fide holder for value.**

5. The note mentioned was taken as collateral, in part, to other notes then transferred and indorsed by the same payee to plaintiff. At least $4,100 of the amount realized for the notes transferred was placed to the credit of the payee upon plaintiff's books. There is no evidence that this sum or any part thereof was paid out before plaintiff was informed of the fraud practiced on the maker of the note in suit. Unless paid out before so informed, plaintiff could not be a holder in due course for value.

[1] Reported in 173 N. W. 661.

Action in the district court for St. Louis county to recover a balance of $1,800 upon a promissory note. The facts are stated in the opinion. The case was tried before Dancer, J., who at the close of the testimony denied plaintiff's motion for a directed verdict, and a jury which returned a verdict for defendant. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, plaintiff appealed. Affirmed.

*Fred W. Hargreaves, Warner E. Whipple* and *Frank E. Randall,* for appellant.

*Wm. B. Phelps,* for respondent.

HOLT, J.

Suit on a promissory note executed by defendant and claimed to have been purchased in good faith by plaintiff before maturity and for value. The defense was that the note had its inception in fraud and that plaintiff was not a bona fide holder. Verdict for defendant and plaintiff appeals from the order denying its motion in the alternative for judgment or a new trial.

In Minneapolis a corporation by the name of Wood County Cranberry Company had a location, so did E. E. Galle & Company. E. E. Galle was an officer of both corporations. The first mentioned corporation owned a swamp of 50 acres in Jackson county, Wisconsin, subject to a $12,000 mortgage, which had been foreclosed. Whether the swamp was in its natural state, except for the mortgage, is not disclosed, nor does it appear that the corporation owned any other property whatever. However, E. E. Galle & Company undertook to float $37,500 worth of the Cranberry Company's 6 per cent profit sharing bonds on the strength of the existing equity of redemption in the swamp, and one of its solicitors sought out defendant, and succeeded in selling him $2,000 worth of bonds at a premium of $100. The note in suit was executed to E. E. Galle & Company in payment for the bonds. The next week plaintiff claims to have become the holder thereof, as collateral to an existing indebtedness of $2,500 and to $5,500 worth of other notes, sold and indorsed by the company to plaintiff. Notes to the amount of $4,610, including defendant's were turned over as collateral at the time. The record discloses that the amount received for the $5,500 notes discount-

ed was placed to the checking account of E. E. Galle & Company, but it does not show whether it has been drawn out. The original indebtedness of $2,500 has not been fully paid, and on the collateral notes there is unpaid about $800, besides what has not been collected upon defendant's note.

The court submitted the question of fraud to the jury, and also the question whether plaintiff took the note in due course of business without notice or knowledge of the fraud. If the defendant succeeded in proving that the note had its inception in fraud, there could be no recovery unless plaintiff proved by a fair preponderance of the evidence that it was a good faith purchaser for value before maturity, and the jury were so instructed in clear and concise language.

Most of plaintiff's able argument is directed to the propositions that the evidence does not sustain the charge of fraud, and does not warrant a finding that plaintiff was not a bona fide holder for value.

The only fraudulent representation made to defendant by E. E. Galle & Company's agent which, under the court's charge, could be considered, was whether it was represented that the Cranberry Company was in excellent financial condition. Defendant admits that he was told there was a slight mortgage upon the property. It appeared at the trial that there was a $12,000 mortgage thereon, which had been foreclosed when the note was procured. The jury could well find that the representation, if made, was false and fraudulent, and induced defendant to execute the note. Misrepresentation of the financial standing of the corporation whose bonds are being disposed of, no doubt constitutes actionable fraud. It was not an opinion merely as to the value of the bonds sold. It related to the financial standing of the party issuing the bonds and was a material fact. Winston v. Young, 47 Minn. 80, 49 N. W. 521. No attempt whatever was made to show that the Cranberry Company had any financial standing whatever, or that it owned any property beyond the equity of redemption, or that the equity was not a liability instead of an asset.

We are also of the opinion that the proof of the plaintiff being a bona fide holder for value is not so strong that a verdict to the contrary should be regarded as unsupported. Why the two corporations doing business in Minneapolis on the basis of a 50 acre swamp in Jackson

county, Wisconsin, should seek out the president and cashier of the plaintiff bank in Phillips, about 100 miles north of the land, to act as trustees for the bond purchasers of the one corporation, and the other corporation should have obtained a credit of $2,500 on a note, and $1,400 on an overdraft, were circumstances for the jury's consideration. So was the character of the cranberry enterprise to bankers. This question was asked of plaintiff's cashier: "Of course you knew as an officer of the bank about these notes that were outstanding in favor of Galle & Company; knew what they were given for, didn't you?" His answer was: "No, I can't say that I do." Further answers touching his knowledge and bona fides left it for the jury to determine whether he was to be believed or not. This witness' protestation of guileless ignorance touching the operations of the two corporations and their connection with the note and its consideration was not conclusive upon the jury. The note having been proven to have had its inception in fraud, the burden was on plaintiff to show itself a bona fide holder, in due course, without notice of the fraud, and this cashier and trustee for the bondholders was the only witness produced upon that proposition.

Plaintiff makes the claim that the fraud referred to in section 5867, G. S. 1913, is confined to deception in obtaining the signature and does not go to the fraud or deceit practised in inducing the signer to accept something in exchange for the instrument. The section provides that the title of a person who negotiates an instrument is defective within the meaning of the Negotiable Instruments Act "when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means," etc. The court in Hill v. Dillon, 176 Mo. App. 192, 161 N. W. 881, was inclined to hold that proof of failure of consideration does not render the title defective so as to cast the burden upon the holder to show that the instrument was acquired in due course, without notice of a defense. And Kellogg v. Hale, 190 Ill. App. 15, holds that the fraud referred to in the above section does not cover fraud or misrepresentation in respect to the consideration for the instrument, but must consist of some trick or device that induces the giving of one kind of instrument under the belief of the maker that he is giving one of a different kind, citing Gray v. Goode, 72 Ill. App. 504. This seems a narrow interpretation of the section quoted from, and does

not accord with such cases as Johnson County Sav. Bank v. Walker, 79 Conn. 348, 65 Atl. 132; First Nat. Bank v. Wise, 172 Iowa, 24, 151 N. W. 495; People's State Bank v. Miller, 185 Mich. 565, 152 N. W. 257; Johnson County Sav. Bank v. Kornhauser, 174 App. Div. 136, 160 N. Y. Supp. 913; Demelman v. Brazier, 198 Mass. 458, 84 N. E. 856; Merchants Nat. Bank v. Branson, 165 N. C. 344, 348, 81 N. E. 410; Schlutheis v. Sellers, 223 Pa. 513, 72 Atl. 887, 22 L.R.A.(N.S.) 1210. The fraud of the payee procured the note from defendant, and this cast the burden on plaintiff to prove that it became a holder in due course without notice of the defense.

The contention is also made that defendant is estopped from asserting fraud or any defense based thereon. This proposition does not appear to have received any attention at the trial, but in the motion for a directed verdict mention is made of it. We do not think plaintiff was entitled to a directed verdict on that ground. The facts are: Defendant never received the bonds, but long after the note came into plaintiff's hands there was an attempt to reorganize the Cranberry Company.

Defendant accepted some of the apparently worthless stock then issued, under the belief that plaintiff was a bona fide holder of the note, and that that stock was the only thing to be had out of the fraudulent transaction. It does not appear that defendant then knew of the situation, but rather that he was again victimized.

The record presents another obstacle to a recovery by plaintiff. This note was taken as collateral to secure the old $2,500 note of E. E. Galle & Company to the bank, and also the notes amounting to $5,500 transferred to it on August 3 and 5, 1913. The bank did not pay cash, but placed the $5,500 to the credit of the company. It does not appear when this $5,500 was checked out, or that it was ever withdrawn, except it may be assumed that $1,400 was used to wipe out the overdraft. It does appear that a large part of the collateral notes was paid. The cashier testified that at the time of the trial E. E. Galle & Company was indebted to the plaintiff in the sum of $2,166 on a renewal note of the one for $2,500 which it held when defendant's note was obtained, besides it held two other notes on which there was the company's guaranteed indorsement. It is not shown that these other notes were the ones to which defendant's note was collateral. There is some indication that

about $900 is unpaid on one of the notes discounted on August 3 or 5, 1913. But, for all that appears, plaintiff may have had enough of E. E. Galle & Company's funds on deposit to make itself whole when notice was received of a defense to the note in suit. Union Nat. Bank of Columbus v. Winsor, 101 Minn. 470, 112 N. W. 999, 118 Am. St. 641, 11 Ann. Cas. 204. We find no occasion to interfere with the result reached by the learned trial court.

The order is affirmed.