### H. L. McWETHY v. G. J. NORBY.[1]

August 1, 1919.

No. 21,277.

**Negotiable Instruments Act — fraud in inception of note.**

1. A note, given to be used, with the notes of others, only as collateral to a note of the payee, and which is sold and indorsed by the payee before maturity as an original obligation, is negotiated "in breach of

[1] Reported in 173 N. W. 803.

faith" and "under such circumstances as amount to a fraud" within the meaning of the Negotiable Instruments Act.

**Same — evidence.**

2. There was evidence in this case that the note sued on was so given. The evidence does not conclusively show that it was not.

**Bills and notes — burden on plaintiff indorsee — sufficiency of evidence.**

3. Proof having been made that the note was defective, the burden was upon the plaintiff, an indorsee, to show that he purchased it for value, in good faith, and without notice. The evidence on this point made a question of fact for the jury. It was not conclusive in plaintiff's favor. Evidence not directly contradicted may not command a verdict, where the inferences to be drawn from all the circumstances may lead to different conclusions by reasonable men.

**Same — certificate of stock — letter admissible.**

4. Plaintiff claimed that the note was given for the purchase price of stock sold defendant. It appeared that, at a time after the note had been negotiated, a certificate of stock had been transmitted by mail to defendant. It was proper to admit an accompanying letter in evidence in explanation of the sending of the stock.

**Same — admissibility of evidence.**

5. It was not error to permit examination of plaintiff as to whether he inquired of the maker before purchasing the note.

**Appeal and error — order in reception of evidence immaterial.**

6. The order in which evidence is received does not concern this court on appeal.

Action in the district court for Becker county to recover $1,000 upon a promissory note. The answer alleged in defense the facts mentioned at the beginning of the opinion. The case was tried before Roeser, J., who at the close of the testimony denied plaintiff's motion for a directed verdict, and a jury which returned a verdict in favor of defendant. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, plaintiff appealed. Affirmed.

*Johnston & Carman,* for appellant.

*H. N. Jenson,* for respondent.

HALLAM, J.

Action by an indorsee of a promissory note for $1,000. The jury

found for defendant. Plaintiff appeals. The facts shown in defense are as follows: The Service Machine Corporation, with headquarters at Aurora, Illinois, was engaged in the manufacture of a postage stamp vending machine. Enterprising agents sold considerable stock in the vicinity of Detroit, Minnesota. Defendant became a stockholder. Defendant testified that, thereafter, and in July, 1916, an agent of the corporation procured from him this note on the representation and with the stipulation that it was to be used with the notes of others of his neighbors, only as collateral to the note of the corporation, and to enable the corporation to float a loan; that stock in double the amount of the notes was to be deposited with C. A. Baker, as trustee, as security; that the corporation proposed to put men in the field to sell the stock at par; that one-half of the proceeds was to be used to repay the money borrowed, 25 per cent of the other half was to go to expense of selling the stock, and defendant was to receive back his collateral note, fully discharged, together with $750 worth of stock for the use of his credit. Defendant's better judgment was against going into the scheme, but "knowing all the other fellows were going in" he gave his consent. His anticipations were not realized. The corporation, instead of using the note as collateral, sold it to plaintiff without giving its own note at all. It sold no stock and when the due date of the note came, instead of its being returned, canceled, with a large bonus of stock for the accommodation, defendant found a demand for payment made upon him by plaintiff, who claimed to be a good faith purchaser for value. These are the facts claimed by defendant and the facts which we may assume the jury found true.

Two questions are presented: First, was the note defective in its inception? and if so, second, was plaintiff a bona fide purchaser for value?

1. The Negotiable Instruments Act provides that "the title of a person who negotiates an instrument is defective within the meaning of this act * * * when he negotiates it in breach of faith, or under such circumstances as amount to a fraud." G. S. 1913, § 5867.

It seems clear that this case is within the statute. The Service Machine Corporation could not have maintained an action on this note. Like an accommodation note it had no vitality, no real inception, until negotiated. It was in substance agreed that it should have no inception

as a note until negotiated as collateral to the corporation note. That was a condition to its becoming a binding undertaking. There is a vast difference between negotiating a note as collateral, as one of a number of collateral notes, and negotiating it as an original obligation. This case illustrates it. The corporation liability as an indorser was not preserved. If defendant is liable at all he has no recourse on the note, against the corporation. Had his note been used as collateral only, he would have had recourse against the corporation and contribution as against the makers of the other collateral notes. Clearly the note was negotiated "in breach of faith" and "under such circumstances as amount to a fraud." In re Hopper-Morgan Co. 156 Fed. 533, affirmed In re Hopper-Morgan Co. 91 C. C. A. 37, 166 Fed. 1020. See Mendenhall v. Ulrich, 94 Minn. 100, 101 N. W. 1057; Stoddard v. Kimball, 6 Cush. 469; Bowman v. Van Kuren, 29 Wis. 209, 9 Am. Rep. 554; Beach v. Nevins, 162 Fed. 129, 89 C. C. A. 129, 18 L.R.A. (N.S.) 228.

2. Plaintiff claims that the evidence shows conclusively that the note was given, not as collateral, but in payment of stock purchased by defendant. We have examined the evidence carefully and cannot come to this conclusion. It is urged that certain written documents are conclusive to that effect. We do not concur in this. The documents consist of, first, a letter from the service corporation to C. A. Baker, trustee, in which the corporation agreed to sell 2,500 shares of "your common capital stock, par value ten dollars," within a year and "to net you twenty thousand dollars cash for said stock," and second, a receipt, signed by the corporation, acknowledging receipt from defendant of $1,000 in full payment for 200 shares of the common capital stock of the corporation, "said shares to be issued to and held by C. A. Baker, trustee." But defendant's testimony is that he never saw these documents and did not receive the receipt until long after the note was given and transferred to plaintiff. The documents are not conclusive evidence against defendant.

3. The next question is, was plaintiff a bona fide purchaser, for value, without notice of the defect in the note. In other words, is there evidence to sustain a finding that plaintiff's action in taking the instrument amounted to bad faith? G. S. 1913, § 5868. We think the evidence made this question one of fact for the jury.

Proof having been made that the note was defective, the burden was upon the plaintiff to show that he purchased the note for value, in good faith, and without notice of the fraud. Mendenhall v. Ulrich, 94 Minn. 100, 101 N. W. 1057; Cole v. Johnson, 127 Minn. 291, 149 N. W. 466; Snelling State Bank of St. Paul v. Clasen, 132 Minn. 404, 157 N. W. 643. Plaintiff and Mr. Moriarity, president of the service corporation, were intimate. They had held stock together in a former corporation which was reorganized into the service corporation. Plaintiff was a stockholder in the service corporation, and held bonus stock. He knew that the note arose out of a stock selling transaction. The maker of the note was a stranger, hundreds of miles away. Plaintiff testified that he inquired of a Detroit bank as to the maker and that he had a copy of the letter but did not produce it, nor did he produce the answer of the bank or state what it was. Yet he took this note without security, other than the service corporation's indorsement, and then released the indorsement by failure to protest the note. He sent the note for collection through a bank. No explanation is given as to why the bank did not protest the note to hold the indorser, as it was under obligation to do unless instructed to the contrary. Jagger v. National G. A. Bank, 53 Minn. 386, 55 N. W. 545. When fraud in the procurement of the note was asserted, he brought suit on it, without ever suggesting to the indorser that it had sold him a note claimed to have its inception in fraud, and without even advising it of the bringing of the suit. His conduct with reference to the note after it became due is material. See Dekalb Nat. Bank v. Thompson, 79 Minn. 151, 81 N. W. 765.

True plaintiff testified that he paid value for the note; that it was part of his business to purchase notes; that the service corporation assured him the note was good, and that he had purchased other notes from the corporation which had been paid. His testimony as to his good faith is not conclusive. Evidence not directly contradicted may not command a verdict, where the inferences to be drawn from all the circumstances may lead to different conclusions by reasonable men. Elwood v. Western Union Tel. Co. 45 N. Y. 549, 6 Am. Rep. 140.

4. Over objection of plaintiff, the court received in evidence a letter written by "W. F. Moriarty, President," to defendant on August 13, 1917, in which the writer inclosed 75 shares of stock of the service corporation and stated: "This is the stock earned by you on the deal made

with you a year ago. In addition to this we have issued certificate No. 667 for one hundred twenty-five shares of the common capital stock of this company, which stock will be attached to the new notes which you are giving to take the place of the ones now past due. * * * We have not had an opportunity to settle on the discount on these notes, but pending this you can take up the old notes with the new ones as we will make the necessary arrangements for this exchange * * *." Plaintiff contends that this was simply an admission by the former owner of the note in disparagement of the title of plaintiff, the indorsee, and that it was, therefore, not admissible. The evidence could not be received for that purpose. Roach v. Halvorson, 127 Minn. 113, 148 N. W. 1080. We think, however, it was admissible for another purpose. Plaintiff's counsel, on cross examination, dwelt upon the fact that this 75 shares of stock was delivered to defendant, and he was manifestly impressing the claim that this fact pointed to the conclusion that the whole transaction was a stock sale as plaintiff claimed it to be. In explanation we think it was proper to show the circumstances under which the stock was delivered by the letter which accompanied the delivery.

5. Some rulings on admissibility of evidence are assigned as error. They present no reversible error. It was not error to permit defendant to inquire whether, before purchasing the note, plaintiff has inquired of the maker regarding the same. He was not called upon to make such inquiry in the absence of some facts which should lead him to believe that the paper was defective. Cochran v. Stewart, 21 Minn. 435. But it was proper to show what plaintiff did do as part of the history of the case. Testimony that members of plaintiff's family were connected with the service corporation was not of much importance or prejudice. The testimony as to the circumstances of the making of the note was proper. Whether it was received out of regular order is not important.

We find no substantial error in the charge.

Order affirmed.