## FARMERS STATE BANK OF GARDEN CITY v. LOUISA B. COOKE.[1]

June 3, 1921.

No. 22,303.

**Bills and notes — Fraud in inception — burden of proof on holder.**

1. When it was shown that negotiable promissory notes were obtained by the fraud of the payee, the burden of proving that it became a holder in due course was cast on a bank to which they were indorsed by the payee without recourse.

**Question of good faith of holder for the jury.**

2. Although the testimony that the notes were purchased in good faith was not directly contradicted, the inferences to be drawn from all the circumstances might lead to a different conclusion by reasonable men, and hence the question of whether the bank was a holder in due course was properly submitted to the jury.

Action in the district court for McLeod county to recover $1,000 upon two promissory notes. The defenses interposed are given in the second paragraph of the opinion. The case was tried before Tifft, J., who at the close of the testimony denied plaintiff's motion for a directed verdict on the grounds that the defense had wholly failed to prove any defense and defendant had shown herself grossly negligent at the time the instruments were signed, and a jury which returned a verdict in favor of defendant. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, plaintiff appealed. Affirmed.

[1]Reported in 183 N. W. 137.

*C. O. Dailey,* for appellant.

*O. G. Odquist,* for respondent.

LEES, C.

Plaintiff brought this action against defendant as the maker of two promissory notes of $500 each, which had been indorsed by the payee without recourse.

Defendant interposed three defenses: The first, that she had not signed the notes; the second, that they had been procured by fraud and that plaintiff was not a holder in due course; and the third that, if she signed the notes, her signature was procured by fraudulent representations as to their nature and terms and that she was free from negligence.

There was a trial by jury and a verdict for the defendant, and plaintiff has appealed from a denial of its alternative motion for judgment notwithstanding, or for a new trial.

The evidence relating more or less directly to the second defense tended to show that defendant is a widow, 58 years old, who has lived nearly all her life on a farm near Hutchinson in this state. She had a high school education, had been a school teacher for two or three years, and had transacted business with Hutchinson banks for about 30 years, depositing money and issuing checks in the usual way. She knew what a promissory note was and had taken many of them. On April 25, 1917, Franklin C. Stevens, a stranger to her, called at her house and asked her to purchase stock in the Northwestern Mortgage, Loan & Land Company of Minneapolis. He read the company's prospectus to her. She was unable to read it without her glasses, which were upstairs and she did not get them. Stevens told her the investment would be good, that the company was flourishing and doing a fine business. She agreed to take five shares of stock at $100 each. He told her she did not have to pay for it at the time and spoke of notes to be given to the company. He read no notes to her, but did read an agreement to take stock, and she signed an application for the stock, relying on what he read to her. Just above her signature these words appear:

"Cash...................... dollars ($        )

Note five hundred dollars (500) due April 25, 1918."

The following day Stevens returned and took her application for an

additional five shares of stock, and in substance the transaction was identical with that which took place the day before. Defendant has never received any stock or other consideration for the notes.

The plaintiff bank is located in a small town south of Mankato. On April 28, 1917, Stevens came to the bank with two notes bearing defendant's signature and offered them for sale. E. H. Monroe, as cashier of the bank, purchased them, giving Stevens the bank's certificate of deposit for $985. Each note was payable to Stevens individually. One was dated April 25 and the other April 26, 1917, and each was payable one year after date, with interest at five per cent per annum. These are the notes on which suit was brought. We are of the opinion that the evidence was sufficient to justify the jury in finding that defendant had established her second defense.

Stevens was not called as a witness and we have only the defendant's own version of the circumstances under which the notes were procured. If her version is correct, he obtained them by falsely representing to her that no notes were to be executed until she got the stock, that they were to run to the company, and that at the end of a year she might return the stock. Her credit was good at the Hutchinson banks, but it does not appear that Stevens offered the notes to those banks for discount. Garden City is a small place remote from the district where defendant lived and was known. The notes were transferred two days after Stevens obtained them. Monroe knew they had been taken for stock in the land company and that they did not run to the company, but to Stevens. He knew that Stevens had organized the company and was a stockholder and president. Monroe became a stockholder in April, 1916, and, at the time of the trial, was a director and secretary. Stevens had then ceased to be an officer. From 1908 to 1913 Monroe was employed as bookkeeper in a Hutchinson bank where defendant had a checking account. He had no acquaintance or business dealings with her after 1913, and none before, aside from his acquaintance with her as a customer of the Hutchinson bank. He did not see her application for stock before he bought the notes. He did not inquire why they were payable to Stevens instead of to the company, nor did he make any inquiry of the defendant with reference to the notes. He did not require Stevens to assume liability as an indorser.

When it was shown that the notes were obtained by the fraud of the payee, the burden of proving that it became a holder in due course was cast on the plaintiff. In recent decisions we have sustained the submission of the question to the jury where there was no contradiction of testimony that a note was purchased in good faith, but the inferences to be drawn from all the circumstances might lead to a different conclusion by reasonable men. State Bank of Rogers v. Missia, 144 Minn. 410, 175 N. W. 614; First Nat. Bank of Rolette v. Andersen, 144 Minn. 288, 175 N. W. 544; McWethy v. Norby, 143 Minn. 386, 173 N. W. 803; First Nat. Bank of Phillips v. Denfeld, 143 Minn. 281, 173 N. W. 661; Snelling State Bank of St. Paul v. Clasen, 132 Minn. 404, 157 N. W. 643, 6 A. L. R. 1663; Cole v. Johnson, 127 Minn. 291, 149 N. W. 467.

The court instructed that if the jury found that the notes were procured by fraud and that the agents or officers of the plaintiff had knowledge or notice of that fact, their verdict should be for the defendant. The giving of this instruction is assigned as error. We think it was a correct statement of the law, for plaintiff could not be a holder in due course, if the state of facts referred to in the instruction existed. Without objection by the plaintiff, the court also submitted to the jury the other two defenses interposed, instructing them to take them up in their order, and, if they found that either of them was sustained by the evidence, their verdict should be in defendant's favor. Granting that the evidence did not justify the submission of either the first or third defense, plaintiff is not in a position to complain, for it neither objected nor excepted to their submission.

Since there was sufficient evidence to permit the jury to find that plaintiff was not a holder in due course, and for aught that appears in the record the verdict may have been returned on that theory, we are of the opinion that the order denying a new trial should be and it hereby is affirmed.