AMY A. CHAMBERLIN v. TWIN PORTS DEVELOPMENT COMPANY AND OTHERS.
EDWARD HAMMON, APPELLANT.[1]

June 28, 1935.

No. 30,414.

[1]Reported in 261 N. W. 577.

*Donald S. Doty,* for appellant.
*Keller* and *Chapin,* for respondent.

HOLT, JUSTICE.

The defendant Edward Hammon appeals from the order denying his motion for a new trial.

The action is to enjoin the foreclosure of a $1,500 mortgage on plaintiff's home in the city of St. Paul and to have it adjudged that there is no more than $400 with interest unpaid thereon. The facts found by the court are, in substance: Defendant Twin Ports Development Company is a domestic corporation, organized and managed by defendant Conner for the promotion of the sale of lots in St. Paul and Superior, Wisconsin. Plaintiff, a widow, owned a home in St. Paul of the value of $4,000. She was 74 years old, of little business experience. An elderly sister lived with her. Conner used devious promotion schemes to attract customers, paying small sums to those who brought others to his meetings. In this manner he became acquainted with plaintiff and her sister and gained their confidence. He succeeded in selling or trading lots to them at prices from eight to ten times their actual value. Defendant Jesmer, an attorney, aided Conner in the latter's fraudulent business transactions. After plaintiff had parted with her

securities to make part payments on the property purchased of Conner, he, with intent further to defraud her, urged her to sell her home and invest the proceeds in lots which would speedily advance in price, and suggested that it could be more readily sold if she placed a mortgage thereon; that the Twin Ports Development Company would loan her $1,500 on her home. He succeeded, and on June 17, 1932, she gave such a mortgage to the company securing her promissory note of $1,500, but never obtained more than $400 thereon, which Conner brought her a few days later. For some months thereafter he, by various misrepresentations and false promises, kept plaintiff from day to day in the belief that she would shortly get the balance of the loan. He finally disappeared. Soon after the note and mortgage were obtained from plaintiff they were turned over to a broker, one Blomquist, who sold them to defendant Hammon for $1,390. Blomquist, retaining $140 as commission, turned over $1,250 to Jesmer for defendant company or its manager, Conner. Hammon visited and examined plaintiff's home before he purchased the note and mortgage, but she was not informed of the fact that he was a prospective purchaser of the security. On June 27, 1932, the note and mortgage were assigned to Hammon, and the assignment recorded on the same day, as was also the mortgage. Shortly before the first semi-annual interest fell due on the mortgage, plaintiff knew that Hammon held it. She was still under Conner's spell, he furnished her the money, and she paid the interest without disclosing to Hammon that she had not received more than $400 of the $1,500 she was to have.

The assignments of error are many. Numerous amendments of the findings were asked for by appellant. The findings were amended in certain respects. It is enough to say that where there is conflict in the evidence as to an issue of fact, the trial court's finding cannot be disturbed on appeal. We think the findings as finally left are sustained by the evidence, and that none of those requested and refused are so proved that the court was compelled to make them.

Error is assigned upon the reception in evidence of a deed given by plaintiff to Conner, and a contract relating to her purchase of a

lot in the addition in St. Paul which he was promoting. We think evidence of the transactions and dealings between plaintiff and Conner was relevant and material to establish the fraudulent plan or scheme whereby Conner led her on to execute the note and mortgage by means of which she was swindled. That Conner, from his first contact with plaintiff and her sister, persistently pursued a course of deception to deprive them of their property must be conceded by everyone who reads the record. Where the issue is fraud and deception the evidence must necessarily take a wide range. The swindler assumes the role of an honest man to accomplish his end. And therefore his transactions reveal his purpose better than his words. The court did not err in receiving the documents mentioned. For the reason already stated, competent evidence of the value of the lots involved in the deals between plaintiff and Conner was properly received.

The question of first importance in this appeal is whether appellant was entitled to a finding that plaintiff is estopped from claiming that there is unpaid on the note and mortgage no more than $400. The court refused to find that before appellant bought the note and mortgage plaintiff by word or conduct induced him to believe that the same were valid. There was a finding that appellant and the broker Blomquist went to plaintiff's home in her absence and desired to be admitted so as to examine it. That her sister, who was home, refused to let them enter until Conner came up and vouched for them; that he led the sister to believe they were prospective buyers of the home. There is evidence to sustain that finding, which negatives the one requested. The court declined to accept the testimony of Blomquist and appellant as against that of plaintiff and her sister upon that issue. It was the trial court's function to decide which of the conflicting versions of what transpired was true. We cannot disturb the finding made. The only other circumstance in the record upon which estoppel could be claimed is that some six months after the mortgage was given plaintiff paid the full semi-annual interest then due to appellant's attorney without disclosing the fact that she had not obtained more than $400 of the amount to be loaned by the mortgagee. Conner still

had her confidence. He furnished her the money she paid appellant and assured her the $1,100 still coming to her on the loan would be paid to her in a few days. There is nothing in the evidence that would indicate that appellant could have bettered his position if he then had been told that plaintiff had received no more than $400 on the note. The failure to inform appellant of that fact after he had purchased the note and mortgage does not appear to have worked any detriment to him. We are of the opinion that the evidence does not require a finding that plaintiff is estopped from asserting that no more than $400 is due or will be due on the note and mortgage. Appellant relies greatly on Rothschild v. Title G. & T. Co. 204 N. Y. 458, 97 N. E. 879, 41 L.R.A. (N.S.) 740, where the person whose name had been forged to a promissory note and mortgage securing it, with full knowledge of the forgery, paid two or more instalments of interest thereon, was held to have ratified the signatures and estopped from showing that they were forged as against the *bona fide* holder in due course. There is this difference between that case and this: There the mother knew that her son had committed forgery, and she, by paying interest without revealing the crime, may have deprived the holder of the forged instrument from having recourse to the law for redress; here plaintiff was kept in delusion by Conner, who furnished the money to pay the instrument, and she was not conscious of any crime or fraud being perpetrated or intended.

There being no estoppel, it is plain that the court rightly enjoined the foreclosure of the mortgage for more than plaintiff had actually obtained from the mortgagee. An assignee of a mortgage, a *chose* in action, takes it subject to the equities existing between the original parties to the instrument. 4 Dunnell, Minn. Dig. (2 ed. & Supp. 1932) § 6284; Johnson v. Howe, 176 Minn. 287, 223 N. W. 148; Loring v. Swanson, 180 Minn. 104, 230 N. W. 277; Rea v. Kelley, 183 Minn. 194, 235 N. W. 910.

The remaining question is whether appellant has established that he was a holder in due course of the promissory note. We think plaintiff proved that there was fraud practiced by Conner in obtaining it for the payee, the Twin Ports Development Company, so

as to bring the same within 2 Mason Minn. St. 1927, § 7098. The note was obtained and negotiated for the purpose of swindling plaintiff out of $1,100. Hence the burden was upon defendant to prove himself a holder thereof in due course. First Nat. Bank of Phillips v. Denfield, 143 Minn. 281, 173 N. W. 661; McWethy v. Norby, 143 Minn. 386, 173 N. W. 803; State Bank of Rogers v. Missia, 144 Minn. 410, 175 N. W. 614; Farmers State Bank v. Cooke, 149 Minn. 227, 183 N. W. 137; Henning v. Carlson, 151 Minn. 419, 186 N. W. 799; Olsen v. Hoffmann, 175 Minn. 287, 221 N. W. 10. The court found "as a fact that said defendant Edward Hammon has not proved by a preponderance of evidence that he purchased said note and mortgage as a holder in due course." The assignments of error attack this finding as unsupported. There were several matters disclosed discrediting the claim of appellant that he was a holder in due course. His testimony as to the number of mortgages he had procured in a given time and his dealings with Blomquist displayed such lack of memory as to suggest that it was purposely evasive. The mortgage was in the possession of Blomquist but not recorded until simultaneously with the assignment. Plaintiff was in occupancy of the property, appellant examined it, but, according to the finding, on conflicting evidence, he did not intimate that he intended to buy the note and mortgage. The discount was large. Blomquist's commission was large. There was turned over to the mortgagee only $1,250. Jesmer, who had some connection with the transaction, was not called to corroborate appellant. We think the learned trial court, who had the opportunity to observe the manner in which the different witnesses gave their testimony, was justified in making the findings quoted.. In Farmers State Bank v. Cooke, 149 Minn. 227, 183 N. W. 137, no more persuasive evidence than here was held to support the jury's finding that the holder of the note there in suit had not sustained the burden of proof. We therefore think the trial court correctly concluded that the amount unpaid on the note was $400 with interest and that it be canceled as to any amount in excess of said sum.

Other assignments of error are without merit or relate to matters which have no controlling bearing on the appeal.

Order affirmed.