LEVERNE K. ANNIS v. HAROLD R. ANNIS.
CASUALTY UNDERWRITERS, INC., GARNISHEE.

84 N. W. (2d) 256.

July 19, 1957—No. 36,972.

*F. L. Palarine* and *Harry H. Peterson,* for appellant.
*Hansen, Hazen & Lynch,* for respondent.

MATSON, JUSTICE.

In a garnishment proceeding wherein the trial court found for the insurer as garnishee, plaintiff appeals from an order denying his motion for a new trial.

Plaintiff, a guest passenger in defendant's automobile, commenced the garnishment proceeding to recover from defendant's insurer, the garnishee, the amount of a judgment awarded to plaintiff against the defendant in the main action for damages for personal injuries arising out of an automobile accident. The trial court found for the garnishee on the ground that the defendant, the insured, had breached the cooperation clause of the indemnity insurance policy by failing to disclose to the garnishee insurer the true facts as to how the accident happened.

■ This case involves the application of the elementary principle that whether an insured under a policy of automobile indemnity insurance has breached the cooperation clause is a question of fact and that the trial court's findings thereon will be affirmed on appeal if they are sustained by the evidence as a whole.[1] Obviously, this rule is equally applicable whether the findings favor the insured or the insurer.

■ What disclosure of facts by the insured to the insurer constitutes compliance with the cooperation clause? Clearly, the requisite standard of cooperation neither justifies nor requires the insured to combine with the insurer in presenting a sham case or in any way to depart intentionally from the truth in providing evidence for the defense.[2] On the other hand, the insured must not by fraudulent and collusive conduct with a third person impair any material right of the insurer and neither may he give a false disclosure of the facts, knowing the same to be false, and permit the insurer to rely thereon to its detriment.[3] The insured satisfies the cooperation clause if at all times he stands upright as an honest man who neither aids nor injures the insurer by any intentional and material departure from the truth as he in good faith knows, or reasonably believes, the truth to be.

■ The insured's bona fide adherence to truth in reporting the relevant and material facts to the insurer, as he remembers and reasonably believes them to be, constitutes the requisite degree of cooperation and such standard of cooperation is not impaired by any slight discrepancies or unimportant variations between his pretrial disclosure of the facts and his testimony on the trial or by any unintentional or accidental mistakes in his pretrial accounts of the circumstances and causes of the accident.[4] Lest the cooperation clause become an en-

---

[1] Tomlyanovich v. Tomlyanovich, 239 Minn. 250, 58 N. W. (2d) 855, 50 A. L. R. (2d) 108; Johnson v. Johnson, 228 Minn. 282, 37 N. W. (2d) 1; Annotation, 34 A. L. R. (2d) 267; Bassi v. Bassi, 165 Minn. 100, 205 N. W. 947.

[2] Johnson v. Johnson, 228 Minn. 282, 37 N. W. (2d) 1; Annotations, 139 A. L. R. 771, 784, 98 A. L. R. 1465, 1470, and 72 A. L. R. 1446, 1453; Buckner v. General Cas. Co. 207 Wis. 303, 241 N. W. 342.

[3] Annotation, 98 A. L. R. 1465, 1471.

[4] Johnson v. Johnson, *supra;* Donahue v. Peppard, 188 Minn. 625, 248 N. W. 48.

trapment of technicality whereby an insured is unjustly deprived of the insurance protection for which he has paid, reasonable allowances must be made for the undeniable fact that the average person by entering into an insurance contract does not thereby become wholly consistent and infallible in observing, remembering, or reporting the circumstances of an accident. Good faith, however, in telling and in adhering to the truth at all times is the keystone of the cooperation arch. The insured must not prejudicially embarrass or cripple his insurer in its defense by switching from one version of the facts to another or blow hot and cold to suit his own convenience or that of a third party.[5]

In applying these principles, we take, as we must, the view of the evidence most favorable to the trial court's findings. The accident occurred on October 28, 1951, near Litchfield as defendant, with plaintiff as a passenger, was driving westerly on Highway No. 24 and on the junction thereof with Highway No. 12. Defendant's car rolled over as he tried to make the turn onto Highway No. 12.

Two days after the accident, defendant gave his insurer a written and signed notice of loss in which he specified "failure of brakes" as the only cause of the accident. In the course of the next two weeks defendant, in presenting his own claim for medical benefits under the policy, submitted to the insurer written reports by each of his two attending physicians. At the top of each of these two medical reports defendant, in his own handwriting, gave the cause of the accident in these words:

" Breaks [sic] failed and couldn't[6] make turn."

On August 11, 1952, the insurer took a court reporter's statement from the defendant. In that statement defendant said that just prior to the accident he made two stops at which time the brakes worked perfectly. He stated that he was driving between 45 to 50 m. p. h. and *that neither the plaintiff, nor the third passenger, complained of his driving or the speed at which he was traveling.* Defendant said that as he

---

[5]See, Home Ind. Co. v. Standard Acc. Ins. Co. (9 Cir.) 167 F. (2d) 919, 924.

[6]In one of the reports the word "didn't" was used instead of the word "couldn't."

approached the junction he pushed down on the brakes but there was no braking effect and the car did not slow down. He definitely expressed the opinion that he would have been able to stop if the brakes had worked. He made no mention of excessive speed as being a contributing factor.

On June 24, 1952, defendant again signed a written statement wherein he said that when he was about 100 feet from the intersection he put on the foot brake *and there was no reaction at all although the pedal went right down to the floorboard. He emphasized that he had no advance notice that the brakes were not going to work.*

On September 11, 1952, defendant's deposition was taken. In the course thereof he testified:

"A.   I put on the brakes, I thought I did.

"Q.   You thought you did. You are not sure of whether you applied the brakes or not?

"A.   *Well, I am pretty sure I put on the brakes, but I can't say whether they went to the floor or halfway down or how far they went.*

"Q.   You can't say what happened to the brakes?

"A.   No, I can't say because things happened too quick then; so the next thing I did was—well, the corner was there, I had to turn." (Italics supplied.)

Although he expressed some doubt as to whether he had applied the brakes, he admitted he had told numerous people that he believed the accident was caused by brake failure. He also said that when he was 200 feet from the junction he touched the brakes "easy" and that when he had gone another 100 feet he believed he "tromped" on the brakes but that things were happening so fast that he couldn't say for sure. At best defendant's deposition testimony was evasive. Since he had theretofore consistently informed his insurer that brake failure was the cause of the accident, and had made no mention of excessive speed as a cause, it would hardly seem that his somewhat vague answers in the deposition could be said to put the insurer on notice that he would at the trial repudiate his many prior assertions of unexpected brake failure as the cause of the accident. In any event, it was for the trier of

fact to evaluate the significance of his evasive deposition testimony in the light of the evidence as a whole.

The trial itself commenced on October 28, 1952. On the witness stand (despite his pretrial assertions that neither of his passengers had said anything about driving too fast[7]) he said that plaintiff twice told him that he should slow down. *He then said that he was going too fast and that he could not have made the turn even if the brakes had been working.* He also testified that he just could not remember whether he had applied the brakes as he approached the intersection.

Following defendant's testimony on direct examination, defense counsel asked the trial court for a brief recess to discuss a matter in the court's chambers. The request was granted and in the court's chambers the defense attorney informed the defendant and the court that he would continue defense of the action only with the understanding that the insurance company was reserving any defense it might have under the cooperation clause for failure of the defendant to furnish the insurer with the true facts. Subject to this reservation, defense counsel continued with the trial. A verdict for the plaintiff resulted.

Significantly, plaintiff himself in pretrial disclosures gave brake failure, and nothing else, as the cause of the accident. When plaintiff, two days after the accident, appeared at the Nicollet Clinic for treatment, his physician recorded a medical history to the effect that plaintiff had been injured while riding with his brother when the car collided with a telephone pole because the *brakes failed*. No other cause was mentioned. On the fourth day after the accident plaintiff signed a written statement in which he said:

"* * * As we rode along & Harold tried to stop the brakes didn't work and he couldn't stop."

On January 9, 1952, the insurer's physician examined him and at the trial he testified that plaintiff then told him:

"* * * On October 28th, 1951 he was riding in a car with his brother

---

[7]Defendant in his pretrial deposition of September 11, 1952, admitted that when he was 4 miles from the scene of the accident, plaintiff told him to slow down. He contended, however, that thereafter he drove at a speed of 45 to 50 miles per hour to the intersection where the accident occurred.

in the front seat. They came to a dead end road and there were no brakes. They hit a telephone pole and clipped it off."

At the trial plaintiff, like the defendant, changed his testimony so as to practically abandon his pretrial assertion of brake failure as the cause of the accident.

In the light of the evidence as a whole the trial court could reasonably find that defendant had breached the cooperation clause by repeatedly, prior to trial, *making positive statements to his insurer that the true facts were that the whole cause of the accident was an unexpected and wholly unforeseen failure of the brakes* and not excessive speed as he testified upon the trial. Furthermore, from the similarity in both plaintiff's and defendant's pretrial disclosures, and in their change of position at the trial, the court could reasonably conclude that defendant had entered into collusion with his plaintiff brother to assist him in obtaining a favorable verdict. The court could also reasonably find that the insurer was misled to its detriment in assuming that it had a good defense since any sudden and unexpected mechanical failure, such as a failure of the brakes, will not support a finding of negligence.[8] The variances between defendant's pretrial statements and his testimony were both so substantial and so material as to be prejudicial to the insurer.

The findings of the trial court must be sustained unless prejudicial errors occurred in the course of the trial. We now turn to these alleged errors.

■ We have no occasion to consider plaintiff's contention that the insurer-garnishee waived its defense of noncooperation and was therefore estopped to raise it in the garnishment proceeding. It appears from the record that plaintiff neither introduced evidence tending to prove waiver or estoppel, nor assigned as error in his motion for amended findings or for a new trial, the trial court's failure to make findings of waiver or estoppel. In other words, the theory of estoppel or waiver was not involved in the trial below and is now raised for the first time upon appeal. The general rule, with certain exceptions not

---

[8]See, Olson v. Buskey, 220 Minn. 155, 19 N. W. (2d) 57; Otto v. Sellnow, 233 Minn. 215, 46 N. W. (2d) 641, 24 A. L. R. (2d) 152.

here applicable, is that litigants are bound in this court by the theory or theories, however erroneous or improvident, upon which the action was actually tried below.[9] Under the Federal rules it is likewise recognized that a litigant who fails to plead an affirmative defense may not assert such defense for the first time upon appeal.[10]

■  Did the trial court violate the rule against hearsay by admitting into evidence the following exhibits (a) notice of loss; (b) medical reports of defendant's injuries; (c) defendant's statement of June 24, 1952; (d) plaintiff's statement of November 1, 1951; (e) defendant's statement of August 11, 1952; (f) the transcript of the original trial; (g) defendant's statement of September 11, 1952; and (h) records of the Nicollet Clinic?[11] The hearsay rule has here no application since an out-of-court statement is only hearsay when offered to establish the truth of the matter therein asserted. McCormick, Evidence, § 225. Where statements are offered in evidence, not to prove the truth of the matter asserted therein by an out-of-court asserter, but to prove that such statements were actually made, and are offered for the limited purpose of establishing verbal conduct to which the law attaches some special significance, the hearsay rule has no application. If the fact that a statement was made is material to an issue in the case, the statement is admissible, since it is only when a witness attempts to prove the truth of a given proposition by repeating what another said that his testimony is deemed hearsay. McCormick, Evidence, § 228. Here the various out-of-court statements were offered to show, not how the accident happened, but that the defendant's and plaintiff's pretrial statements were contradictory to those made upon trial.[12] In other words, they were of-

---

[9]Skolnick v. Gruesner, 196 Minn. 318, 265 N. W. 44; Hart v. Bell, 222 Minn. 69, 23 N. W. (2d) 375, 24 N. W. (2d) 41; American Surety Co. v. Greenwald, 223 Minn. 37, 25 N. W. (2d) 681; Miller v. Minneapolis Underwriters Assn. Inc. 226 Minn. 367, 33 N. W. (2d) 48; 1 Dunnell, Dig. (3 ed.) § 401.

[10]Oedekerk v. Muncie Gear Works (7 Cir.) 179 F. (2d) 821.

[11]Hearsay rule. Although plaintiff's objections were all inclusive, he has abandoned all objections except that of hearsay since his previous brief deals only with that objection.

[12]See, Fjellman v. Weller, 213 Minn. 457, 7 N. W. (2d) 521; Keller v. Wolf, 239 Minn. 397, 58 N. W. (2d) 891; 7 Dunnell, Dig. (3 ed.) § 3291.

fered and received to set one contradictory statement against another, not to show which statement was correct, but to serve *as a basis for an inference that the witnesses were untruthful in one or the other* without determining which one. For this further purpose the hearsay objection is inapplicable.[13]

■ Appellant alleges that under Brown v. St. Paul City Ry. Co. 241 Minn. 15, 62 N. W. (2d) 688, 44 A. L. R. (2d) 535, it was error to admit into evidence the records of the Nicollet Clinic pertaining to plaintiff's injuries. The Brown case is not in point. In that case the statements involved were offered to corroborate the plaintiff's account of the accident which involved the very issue before the jury. Here the clinic records, as well as the other exhibits, were not offered or received to establish how the accident occurred.[14] Aside from any question of hearsay, where an alleged breach of the cooperation clause goes beyond a mere refusal to disclose information, and as here is based upon alleged intentional misstatements of material facts in pretrial disclosures, or upon collusion with the plaintiff, whereby the insurer is misled to its detriment, the insured's alleged failure to cooperate in disclosing the facts partakes of a general scheme to defraud the insurer, and therefore any statements containing pretrial representations of fact are admissible if they have a reasonable tendency to show an intent or a design to mislead the insurer by such disclosures, or an intent to abandon the truth and thereby defraud the insurer by giving false testimony at the trial.[15] Where the issue is fraud and deception, the evidence must necessarily take a wide range and even collateral facts are admissible if they have a logical tendency to throw light on the issue.[16]

---

[13]3 Wigmore, Evidence (3 ed.) § 1018; State v. Johnson, 12 Minn. 378 (476).

[14]Other cases cited by plaintiff have been considered and likewise been found not to be in point.

[15]See, Albrecht v. Rathai, 150 Minn. 256, 185 N. W. 259; State v. Horr, 163 Minn. 141, 148, 149, 203 N. W. 979, 982; Terzian v. Carlson, 176 Minn. 219, 222 N. W. 921; McCormick, Evidence, § 164; 2 Wigmore, Evidence (3 ed.) § 304.

[16]Chamberlin v. Twin Ports Development Co. 195 Minn. 58, 261 N. W. 577; 8 Dunnell, Dig. (3 ed.) § 3838.

No consideration will be given to the contention that it was error not to expunge from the testimony all references to conspiracy and collusion. The garnishment case was tried by the court without a jury and no prejudice could have occurred since the findings are clearly based solely on the evidence and not on any fortuitous opinions of others as to conspiracy and collusion.

The order of the trial court is affirmed.

Affirmed.