LEMUEL E. DEMELMAN *vs.* CHARLES G. BRAZIER & others.

Suffolk.  January 7, 1908. — May 18, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Bills and Notes,* Liability of indorser, Accommodation paper, Payment. *Practice, Civil,* Exceptions. *Evidence,* Presumptions and burden of proof. *Fraud. Payment.*

It is not necessary, in order to charge an indorser of a promissory note which the maker failed to pay when it became due, to prove a formal protest by a notary; it is enough to prove that there have been proper demand upon the maker and a refusal by him to make payment, and that seasonable notice of these facts has been given to the indorser.

Exceptions by the defendant in an action upon a promissory note, brought against

an indorser by one alleged to be a holder in due course, to rulings of the judge presiding at the trial permitting the notary who protested the note to "extend" his record of protest while on the witness stand by affixing his seal to the certificate of protest, and then allowing the certificate to be introduced in evidence, will not be sustained where the defendant, in the course of the trial, admitted that he had received from the plaintiff a proper notice of the maker's default in payment, the defendant not being harmed by the rulings.

In an action by one alleged to be the holder in due course of a negotiable promissory note against an indorser, the defendant's answer alleged that the plaintiff was not a holder in due course, and that the defendant's signature was procured by false pretenses. At the trial, the plaintiff testified that he purchased the note from one C. and that, before purchasing, he made diligent search to investigate the authenticity of the note, but did not inquire of the defendant, and that he did not know that the defendant was an accommodation indorser until after the note went to protest. The presiding judge refused to allow the defendant to show that he was an accommodation indorser, and the defendant excepted. In cross-examination the defendant stated that he procured the note from a person not the maker or an indorser and paid nothing for it, that he indorsed it and gave it to one R., who was to negotiate it and give a portion of the proceeds to him. It appeared that R. indorsed the note and gave it to C. The judge, at the request of the defendant, ruled as a matter of law that the jury must be satisfied, in order to find for the plaintiff, that at the time he bought the note he had no notice of any infirmity in it or defect in the title of C. and no knowledge of such facts as to make his action in taking it bad faith, but ruled that there was no evidence that would warrant a finding that any defense to the action was made out, and directed a verdict for the plaintiff. *Held*, that there was error both in the exclusion of evidence that the defendant was an accommodation indorser and in ruling that there was no defense made out and directing a verdict for the plaintiff, since the jury were not bound to believe the plaintiff, but should have been allowed to determine whether the note had been put into circulation fraudulently, and, if so, whether the plaintiff had sustained the burden of showing himself to be a holder in due course.

The answer of the defendant in an action against an indorser of a negotiable promissory note set up payment. At the trial there was evidence that the plaintiff had received from another indorser, to apply toward liquidation of his liability, notes signed by the H. company, which was not the maker of the note in suit, that he had sold the H. company's notes to a person who gave him certain stock in a corporation which was to be the plaintiff's if such person was able to recover anything on the H. company's notes, but that nothing had been realized upon such notes. The defendant introduced no evidence of payment, but requested a ruling that he was entitled to a credit for all that the plaintiff had received on the H. company's notes. The request was refused. *Held*, that the request was refused rightly, since there was no evidence tending to show any payment of or on account of the note, the burden of showing which was on the defendant.

CONTRACT against the indorsers of two promissory notes, each for the sum of $2,500, dated at Watertown in the State of New York on March 29, 1905, and payable four months after date at the Liberty National Bank in the city of New York. Writ against Charles G. Brazier dated August 1, 1905, and a supple-

mental writ issued by order of court against George I. Robinson and Edward L. Collins as co-defendants dated November 9, 1905.

The case was before this court on exceptions taken by the defendants at a previous trial and the decision was reported in 193 Mass. 588. Before the second trial, the defendants Robinson and Collins were defaulted. That portion of the declaration which referred to notice to the defendant Brazier (hereinafter called the defendant) was as follows : " that the maker neglected or refused to pay said note; that said note was duly protested and notice thereof sent to your defendant."

The defendant's answer contained a general denial and alleged payment, that his indorsement was procured by false pretenses, that the plaintiff was not a *bona fide* holder and that the notes had been paid and satisfied since the suit was brought.

At the second trial, which was before *White*, J., the plaintiff called as a witness the notary whose name appeared upon the alleged certificates of protest, and, after he had testified that he was the notary who signed said certificates, he was asked if he desired to extend his record, to which question the defendant objected. The presiding judge admitted the question. The witness thereupon stated : " Through an inadvertence, sir, my notarial seal was left off these certificates. I now ask permission to be permitted to extend these protests by placing my seal on those certificates." The presiding judge ruled that he might annex his seal to said certificates and the defendant excepted. The witness thereupon in the presence of the jury placed upon each of the certificates his notarial seal, which up to that time was not upon them. The notes were then offered in evidence without objection. The notarial certificates were then offered in evidence and admitted, and the defendant excepted. The witness thereafter testified from memory and independently of his records that he personally presented the notes in suit at the place of payment named therein on July 31, 1905, that payment was demanded and refused, and that he then protested the notes, and on the same day sent notices of protest by mail, postage prepaid, to the defendant Brazier and the other indorsers. He also produced his record book which corroborated him as to his doings on July 31, 1905.

The testimony of the plaintiff was to the effect that Collins offered to sell $25,000 in notes of the Hopper-Morgan Company, having upon them indorsements of Collins and of Robinson and of the defendant, and that he took ten days to investigate the value of the notes, " but did not see nor attempt to see or write to either Robinson or the defendant, whose offices were close by or to Morton, another indorser, or to the maker's," who was a paper manufacturer in New York; " that he took into consideration the question whether the defendant was an accommodation indorser and would not have bought the notes if he had known he was, but that he did not know it "; that, before he purchased any of the notes, he asked Collins if he had authority to sell them and Collins in reply showed him a letter purporting to be from Robinson and stating that the notes " were all right and would be paid "; that thereupon he purchased three of the notes for $2,050 each; that, after the notes were protested, the Hopper-Morgan Company went into bankruptcy and paid a dividend of forty per cent on them, and Robinson gave him notes of the Hurd Lumber Company to the amount of $5,000 to be collected and applied on Robinson's indebtedness to the plaintiff, which was then about $12,000, but which had subsequently been paid in other ways, except his liability for $7,500 as indorser on these three notes; that $3,000 of the Hurd notes were now in suit for the plaintiff's benefit by one Wilson, Wilson having exchanged twenty-five shares of Roxbury Distilling Company stock for the $3,000 of Hurd notes, the plaintiff at the same time guaranteeing the payment of the latter; that, if Wilson recovered on these notes, this stock belonged to the plaintiff; that, if he did not, the plaintiff was to pay Wilson $1,250 for the stock; the remaining Hurd notes of $2,000 Wilson had for suit, if he was successful in his first suit; that he never had received a cent out of the Hurd Lumber Company's notes but, on the contrary, had been put to much expense and trouble because of the transaction.

He further testified that, about two months after he had bought the notes, he had a conversation with the defendant, that he said to him, " I bought some Hopper-Morgan Company's notes, two of them bearing your indorsement," and the defendant said, " Have you got two of those notes? Well, I have been

hunting up where they are; they will be paid before they become due. You needn't worry, those notes will be taken care of"; that the defendant did not say at that time that he was an accommodation indorser and said nothing about the invalidity of the paper; that, after the notes went to protest, he for the first time heard that they were questionable, the defendant then telling him that he "had not received anything out of it."

The defendant offered to show that he was an accommodation indorser, but the presiding judge excluded the evidence and the defendant duly excepted. He then testified that he never had received any money on account of the notes, that he indorsed them about April 2 in the office of Robinson, who took them away, and that he never saw them again.

On cross-examination the defendant testified that, desiring to raise some money for a quicksilver mine in which he was interested, he consulted Robinson, who told him that he could get some notes in New York, negotiate them in Boston and in that way raise the money; that he went to New York and there saw one Trautwein and received from him $50,000 worth of Hopper-Morgan Company's notes, among them the two notes in suit, and in return gave Trautwein his personal check for either $1,000 or $2,000, which subsequently went to protest and was not paid, and that he never gave Trautwein, the Hopper-Morgan Company or any of the indorsers anything else of value for these notes; that he brought the notes back to Boston and indorsed a number of them amounting in value to $20,000; that on July 31 or August 1, 1905, he received a notice of dishonor of the notes from the plaintiff and understood that the plaintiff would seek to hold him liable as indorser.

At the close of the evidence, the defendant requested the following rulings: "(1) On all the evidence the plaintiff is not entitled to recover. (2) No sufficient evidence of protest of the notes in suit has been offered to entitle the plaintiff to maintain this action. (3) The defendant is entitled to a credit of $2,000, the entire amount of the dividend paid by the Hopper-Morgan Company in bankruptcy. (4) The defendant is entitled to a credit of all the plaintiff has received on the Hurd Lumber Company notes. (5) In order to entitle the plaintiff to recover, the jury must be satisfied that at the time he bought the notes

in suit he had no notice of any infirmity in the instrument or defect in the title of the person negotiating them and no knowledge of such facts that his action in taking the instruments amounted to bad faith."

The presiding judge refused to give the first, second and fourth rulings, gave the fifth ruling as a matter of law, but ruled that there was no evidence that would warrant a jury in finding that there was any defense made to the notes in suit and thereupon directed the jury to return a verdict for the plaintiff in the sum of $3,528.48; and the defendant alleged exceptions.

*H. T. Richardson,* for the defendant.

*H. C. Sawyer,* for the plaintiff.

SHELDON, J. The defendant contends that the averment in each count of the declaration that the note there mentioned " was duly protested " was a descriptive averment which must be proved as made. But at common law and under our statute no formal protest was needed to hold the indorsers; it was enough if there had been proper demand upon the maker, a refusal by him to make payment, and seasonable notice of these facts given to the defendant. R. L. c. 73, §§ 83, 87, *et seq.* And both parties agree that in this respect the law of New York is the same as our own. But the only ground suggested by the defendant or mentioned in the decisions for holding that in an action of this kind an averment of protest can be treated as sufficient is, that due presentment and non-payment may be inferred from the fact of a protest having been made. *Woodbury* v. *Sackrider,* 2 Abb. Pr. 402. *Adams* v. *Sherrill,* 14 How. Pr. 297. *Burgess* v. *Vreeland,* 4 Zabr. 71. *Nailor* v. *Bowie,* 3 Md. 251. *Rudd* v. *Owensboro Bank,* 105 Ky. 443. *Battle* v. *Weems,* 44 Ala. 105. *Eastman* v. *Turman,* 24 Cal. 379. The reason of this rule is that the word " protest " is used in a popular sense to include all the steps necessary to charge an indorser; *Coddington* v. *Davis,* 1 Comst. 186; and manifestly the word can be construed with no greater stringency for the purpose of limiting the evidence to be introduced at the trial than for the purpose of determining its sufficiency as a matter of pleading. And, as the mere fact of a protest is not conclusive upon the dishonor of the instrument and ·due notice

to the indorsers, these questions must be left to the jury; and other evidence upon them must be competent. *Way* v. *Butterworth*, 106 Mass. 75. This declaration not having been demurred to, the real issue was not whether a formal protest had been made, but whether there had been a proper presentment of the note for payment and due notice given to the defendants of its dishonor. *Farnum* v. *Davidson*, 3 Cush. 232. No question seems to have been made upon this issue at the trial; the defendant Brazier, who is the sole excepting party, testified that he received notice of dishonor and understood that the plaintiff would seek to hold him as indorser; he did not ask to have this question submitted to the jury; and he has not complained before us that it was not so submitted. Under these circumstances he was not aggrieved by the action of the presiding judge in allowing the notary to amend his certificate of protest by affixing his notarial seal thereto, or by the admission of his certificate in evidence. This evidence simply tended to prove a fact the existence of which was afterwards conceded by the defendant.

The defendant has also excepted to the ruling by which the judge excluded evidence offered by him that he was merely an accommodation indorser of the notes sued on. The admissibility of this evidence depended upon the question whether the notes had been fraudulently put into circulation, in which case the burden would be upon the plaintiff to show that he took them in good faith and was entitled to the rights of a holder in due course, and this question must then be left to the jury. *Merchants' National Bank of Lowell* v. *Haverhill Iron Works*, 159 Mass. 158. The defendant's contention was that, having obtained these notes from a third party, he indorsed them and gave them to one Robinson, who was to negotiate them and give him the proceeds up to a fixed amount; and that he never received any part of such proceeds. There was evidence that the plaintiff bought the notes soon after from one Collins, the last indorser upon them. From this evidence, the jury might have found that Robinson either had negotiated the notes himself and appropriated the proceeds, or had turned them over to Collins without authority. In either event, the jury might have drawn the inference that the note had been fraudulently put into circulation. *Shattuck* v. *Eldredge*, 173 Mass. 165. If

it is argued that in selling or procuring Collins to sell the notes to the plaintiff, Robinson was doing exactly what the defendant desired him to do, and that if he subsequently embezzled the money obtained from the plaintiff, this was an independent wrong in no way connected with the plaintiff's purchase, except as that may have given to Robinson the opportunity to commit the subsequent wrong, the answer is that this was a question for the jury. The plaintiff would be entitled to recover if the jury took this view of the facts. *Indian Head Bank* v. *Clark*, 166 Mass. 27. But the jury also might have found that Robinson acted from the beginning with the fraudulent intent, which he afterwards carried out, of embezzling the note or its proceeds, and therefore that the note was fraudulently put into circulation. It was not an unnatural inference that he had acted fraudulently throughout. *Hall* v. *Featherstone*, 3 H. & N. 284. *Smith* v. *Braine*, 16 Q. B. 244. And see the cases cited in 4 Am. & Eng. Encyc. of Law, (2d ed.) 321, 322, notes. Accordingly the evidence offered should have been admitted.

The judge appears to have given the third ruling asked for by the defendant, so that he was credited with the sum of $2,000 paid upon these notes by their maker. He claims that the jury might have found that he was entitled also to a further credit for all that the plaintiff had received upon certain notes of the Hurd Lumber Company given to him by Robinson But there was no evidence that the plaintiff had received any money upon these other notes. There was nothing to control the plaintiff's testimony to this effect; and the burden was upon the defendant to establish the payments which he contended had been made.

It follows from what has been said that the defendant's first, second and fourth requests for rulings were rightly refused. But, after giving the fifth request, the judge should have submitted the case to the jury to determine the questions whether the note had been fraudulently put into circulation and, if so, whether the plaintiff was a holder in due course. The jury were not bound to believe the plaintiff's story, although there was no evidence to the contrary. See the cases cited in *Lindenbaum* v. *New York, New Haven, & Hartford Railroad*, 197 Mass. 314.

*Exceptions sustained.*