Louis H. Jacobs *vs.* Lyle A. Brown & others.

Suffolk.    January 27, 1927. — April 8, 1927.

Present: Rugg, C.J., Braley, Crosby, Pierce, & Wait, JJ.

*Bills and Notes,* Maker, Indorser, Holder in due course, Protest. *Practice,*
*Civil,* Discontinuance. *Evidence,* Notarial certificate, Of notice. *Notice.*

Although, in an action upon a negotiable promissory note against a corpora-
tion as maker and three individuals as indorsers for accommodation
before delivery, the plaintiff discontinues as against the corporation
and it appears that the name of the corporation was signed as maker
by one having no authority so to do, the action still may be maintained
against the accommodation indorsers by a holder in due course.

Where, at the trial of an action against three accommodation indorsers of a
negotiable promissory note, there are in evidence notarial certificates
of protest purporting to show that all the steps necessary to charge the
indorsers were taken, and the plaintiff, who also had indorsed the note
with the defendants, testified that on receiving the notice he mailed on
the same day, postage prepaid, copies duly addressed to two of the
defendants, and had carried a copy thereof to the third defendant, the
question, whether notices of dishonor properly were given to the de-
fendants, was for the jury.

At the trial of an action against three accommodation indorsers upon two
negotiable promissory notes, there was evidence that the plaintiff pre-
viously had made a note payable to one of the defendants, which, after
that defendant had indorsed it, had been discounted at a bank; that a
part of the face of that note was paid when due, and for the balance the
plaintiff had made a new note payable to the same defendant, which,
after he had indorsed it, had been placed with the same bank, where the
plaintiff had paid it; and that, at the same time when the last note was
given, the two notes in suit of the same aggregate amount were given.
The plaintiff introduced evidence to show, and contended, that the notes
signed by the plaintiff were given to the defendant, who was a payee,
for the accommodation of the payee, and that the notes in suit were

given as security for the repáyment to the plaintiff of the amounts of the notes of which he was maker. The defendant introduced evidence to show, and contended, that the notes signed by the plaintiff were for his own purposes and were indorsed by the payee defendant for accommodation of the plaintiff. The judge, in substance, instructed the jury that unless they found the facts to be as the plaintiff contended they must find for the defendant. There was a verdict for the plaintiff. The defendant alleged exceptions. *Held*, that

(1) A finding that the plaintiff was a holder for value was warranted;

(2) A finding for the plaintiff was warranted;

(3) The instructions to the jury were free from error.

CONTRACT, with a writ originally naming as defendants The Landsdowne Corporation, Lyle A. Brown, George W. Kenyon, and Percy E. Ginn, upon two promissory notes for $1,000 and $1,250, respectively, both dated April 7, 1924, bearing the name of the defendant corporation as maker and the names of the other defendants as indorsers. The first and third counts of the declaration were against the corporation as maker. The second and fourth counts were against the individual defendants as indorsers of the notes before delivery. Writ in the Municipal Court of the City of Boston dated July 29, 1924.

The action was removed to the Superior Court, the plaintiff discontinuing against the corporation. There was a trial before *Qua*, J., against the individual defendants. It appeared that the original note for $2,500 made by the plaintiff as described in the opinion was payable to the defendant Kenyon and was discounted by the Jamaica Plain Trust Company and that its proceeds were placed to Kenyon's credit there. Other material evidence is described in the opinion. The judge, in part, charged the jury as follows:

"The plaintiff's claim is that in connection with that $2,500 transaction that Jacobs loaned his name to Kenyon so that Kenyon could get $2,500 on that first note. The defendants' claim, on the other hand, is that it was just the converse of that; that in fact, Kenyon loaned his name on that note to the plaintiff, so that the plaintiff was the man that was really borrowing that $2,500, and not Kenyon. Now what was the fact? What was the truth about it? That is the question for you. The plaintiff cannot recover

against anybody on any other theory than that which he claims, and which I have just outlined to you. The burden is upon the plaintiff to prove that the true facts were in accordance with that theory. The plaintiff cannot recover against anybody unless he satisfies you by the fair preponderance of the evidence that the original $2,500 note was given by him to Kenyon for the purpose of accommodating and lending his name to Kenyon, at Kenyon's request, and that $2,250 note was given by the plaintiff in part payment or renewal of that first $2,500 note, and that the two notes in suit were given as collateral to secure the plaintiff for his signature on the $2,250 note. That is the plaintiff's claim, and that he must show.

"If you find that the true fact about the original $2,500 note, the one dated January 7, was that the plaintiff Jacobs was borrowing the money from the bank and that Kenyon was lending his name to the plaintiff, then the plaintiff cannot recover. If you find on the other hand, that the true fact was that the plaintiff was lending his name to Kenyon, and that Kenyon was borrowing money from the bank, then the plaintiff may recover if he has, in other respects, made out a case under these instructions.

"Now, so far, I have said nothing about any of the defendants except Kenyon. Kenyon, you will remember, was the payee and sole indorser of the $2,500 note and of the $2,250 note, and it is because of the relationship which that situation brings about that I have talked so much about Kenyon. But if the plaintiff can recover against Kenyon, he can also recover against the defendants, Brown and Ginn, if you find that they signed the notes in suit, these two notes on which the suit is brought to accommodate Kenyon. Did they indorse the two notes in suit to lend their name to Kenyon because Kenyon gave the notes in suit, to take care of, or as collateral for the $2,250 note, which, in turn, was given in renewal or payment of the $2,250 note on which Kenyon was the person really liable? Was that the situation or not? That is the only ground on which these other two indorsers, Ginn and Brown, can be held on the notes in suit, that is, as accommodation indorsers for Kenyon. The

negotiable instruments law reads, 'An accommodation party is one who has signed an instrument as maker, drawer, acceptor, or endorser without receiving value therefor, and for the purpose of lending his name to some other person.' Such a person is liable on the instrument to a holder in due course, notwithstanding such holder at the time he took the instrument knew him to be only an accommodation party. The burden of proof is on the plaintiff to show by a fair preponderance of the evidence that Brown and Ginn did sign the notes in suit for the accommodation of Kenyon before those indorsers can be held."

There was a verdict for the plaintiff in the sum of $2,476.70. The individual defendants alleged exceptions.

The case was submitted on briefs.

*J. L. Sheehan*, for the defendants.

*J. M. Graham*, for the plaintiff.

BRALEY, J. This is an action of contract to recover the principal and interest of two promissory notes, each payable to the plaintiff or his order, signed by the corporation as maker and by the defendants Brown, Kenyon and Ginn as indorsers. The plaintiff having discontinued as to the corporation, the trial proceeded against the indorsers, and, the plaintiff having obtained a verdict, the case is here on the defendants' exceptions to the denial of a motion for a directed verdict, to the rulings on evidence, to the refusal to give certain requests, and to portions of the instructions to the jury.

It is contended that the discontinuance prevented further prosecution of the action. But, even if the maker ceased to be a party, the plaintiff could maintain the action against the indorsers, upon proof of liability, although Brown had no authority as president of the corporation to affix its name to the notes. *Matheson* v. *O'Kane*, 211 Mass. 91. The plaintiff had no notice of this infirmity, and the notes on their face purported to be regular. The signatures of the indorsers were admitted, and by their indorsement without qualification they warranted that they had a good title, and that all prior parties had capacity to contract, and that the notes were valid subsisting obligations. G. L. c. 107, § 86. *Leonard* v. *Draper*, 187 Mass. 536.

The defendants also contend that the plaintiff cannot recover because he failed to prove a demand for payment on the maker, and notice of dishonor to them as indorsers. The notarial certificates of protest, however, copies of which are part of the record, were *prima facie* evidence of the facts therein stated. G. L. c. 107, § 13. *Manufacturers National Bank* v. *Simon*, 245 Mass. 325. These certificates show that all the steps necessary to charge the indorsers were taken. *Demelman* v. *Brazier*, 198 Mass. 458, 463. The plaintiff, who was the last indorser, also testified that on receiving the notices he mailed on the same day postage prepaid copies duly addressed to Brown and to Kenyon, and carried one copy to Ginn, who said, "I will see Brown, and see if he can't fix this matter up." The question of notice was for the jury, to whom it was submitted under suitable instructions. *Lamkin* v. *Edgerly*, 151 Mass. 348.

It appears in the record that the notes in suit were given in consequence of an earlier transaction between the plaintiff and the defendant Kenyon. The jury on conflicting evidence, all of which was admissible, warrantably could find, that on January 7, 1924, the defendant Brown solicited the plaintiff for a loan of $2,500 for the use of the Shawmut Paper Box Company, a corporation of which Brown was president, and of which the plaintiff was a stockholder. The plaintiff declined to advance the money, and asked Brown why he did not get Kenyon, also a stockholder, to aid him. In substance Brown replied, that Kenyon could not help as he had outstanding notes at the bank, and that Kenyon had said, that if he could get the plaintiff's note he would indorse it, present the note to the bank for discount and obtain the money. A note for $2,500 was then prepared by Brown which the plaintiff signed as maker. It was payable April 7, 1924, and shortly before maturity Brown informed the plaintiff that only $250 and the interest could be paid. The plaintiff replied, that he wanted it, meaning the note, paid. But, after further conversation the plaintiff signed and gave to Brown a note for $2,250 payable to the order of the defendant Kenyon. This note was dated April 7, 1924, and matured July 7, 1924. When this note was given, Brown

gave the plaintiff the notes in suit, one for $1,000 and the second for $1,250 indorsed by the defendants, each dated April 7, 1924, and respectively maturing May 15 and June 15, 1924. In response to his inquiries the plaintiff was informed by Brown that he would have the money on these notes before the note for $2,500 became due. But no payment was made, and the plaintiff on July 7, 1924, paid the note for $2,250 to the holder. It would follow on these findings that the jury further could find that the note for $2,500 was not indorsed by Kenyon for the accommodation of the plaintiff, but was given by the plaintiff to Kenyon at his request, and for his accommodation, and that the note for $2,250 which the plaintiff gave was in renewal of the balance of the note for $2,500, to the payment of which "the two notes in suit were given" by the defendants "as collateral." The judge correctly instructed the jury that, if they found as a fact that the original note for $2,500 was given because the plaintiff was borrowing the money from the bank, and that Kenyon was lending his name to the plaintiff, then the plaintiff could not recover. But, if they took the view that the plaintiff lent his name to Kenyon, and Kenyon was borrowing the money from the bank, and the defendants Brown and Ginn indorsed for the accommodation of Kenyon, the plaintiff could recover. G. L. c. 107, §§ 47, 48, 52. It is plain that notwithstanding the defendants' contention the plaintiff could be found to be a holder for value. *Goodman* v. *Gaull*, 244 Mass. 528, 529. The motion for a directed verdict was denied rightly.

The defendants' first request that on all the evidence the plaintiff could not recover was not in conformity with the rules of the trial court. The remaining requests, in so far as they related to the corporation and its connection with the litigation were immaterial by reason of the discontinuance, and in so far as they related to the consideration of any of the notes, or whether the defendants or either of them indorsed for the accommodation of the plaintiff, or whether notice of dishonor was seasonably given, or whether the plaintiff was an accommodation maker, could not have been granted in terms. G. L. c. 107, §§ 47, 88, 89. *Mumford*

v. *Coghlin,* 249 Mass. 184, 190.   And in so far as appropriate they were fully covered by the instructions.   *Whitney* v. *Wellesley & Boston Street Railway* 197 Mass. 495.

We also find no error in the instructions to which the defendants excepted.   The judge properly said that, while the corporation was no longer a party, this fact was not conclusive as to the legal rights of the indorsers, or of the plaintiff.   The instructions as to the sufficiency of the protest for nonpayment were in accordance with G. L. c. 107, § 108. The instruction, that the burden of proof was on the plaintiff to show by a fair preponderance of the evidence that Brown and Ginn signed the notes in suit for the accommodation of Kenyon before those indorsers could be held, was right. The charge, when reviewed, clearly and adequately stated the issues upon which the jury were to pass, and, finding no reversible error of law in the conduct of the trial, the entry must be

*Exceptions overruled.*