[No. 21362. Department One. August 21, 1928.]

H. J. MAURY, *Respondent*, v. WINLOCK & TOLEDO LOG-
GING & RAILROAD COMPANY, *Appellant*, WILLIAM
F. JOHNSON MILL COMPANY, *Defendant*.[1]

[1] ALTERATION OF INSTRUMENTS (8)—BILLS AND NOTES (27-1, 73)—
DEFENSES AGAINST BONA FIDE PURCHASERS—CHANGE IN OBLI-
GATION—ACCELERATION OF MATURITY. Where a stockholder in a
corporation, interested in the transaction, undertook to place a
trade acceptance for the sole benefit of the drawee, which he
did only after obtaining consent to an acceleration of the date
of maturity, and turned the proceeds over to the drawee, he
must be considered the agent of the drawee for the purpose of
discounting the paper; and hence the acceleration of the date
of maturity was no defense to an action on the acceptance,
upon its dishonor.

[2] BILLS AND NOTES (108)—PLEADING—PROTEST. Under an allega-
tion that a trade acceptance was "duly protested" on its dis-
honor, which was denied, evidence is admissible of a formal
protest before a notary public; the word "protest" used in its
popular sense, including all the steps necessary to charge an
endorser.

Appeal from a judgment of the superior court for
Lewis county, McKenney, J., entered October 25, 1927,
upon findings in favor of the plaintiff, in an action on
contract, tried to the court. Affirmed.

*Chamberlain, Thomas, Kramer & Powell* and *Hay-
den, Langhorne & Metzger,* for appellant.

*Forney & Ponder,* for respondent.

BEALS, J.—The defendant, William F. Johnson Mill
Company, a corporation, hereinafter called the Mill
Company, being indebted to the defendant and ap-
pellant, Winlock & Toledo Logging & Railroad Com-
pany, a corporation, for logs theretofore purchased,
and both parties desiring that some portion of the in-
debtedness be paid, prepared a sixty-day trade ac-
ceptance, bearing date June 15, 1925, for $5,000, which

[1]Reported in 269 Pac. 815.

was, after it was signed and endorsed by appellant, Winlock & Toledo Logging & Railroad Company, through its manager, A. C. Shives, by him delivered to F. E. Veness, who was himself engaged in the lumber business and interested to a considerable extent in the affairs of both of the corporations above referred to. Mr. Veness was a stockholder in a corporation which owned a considerable portion of the capital stock of appellant corporation; Mr. Veness testified it "practically owned" the appellant corporation, and was to that extent interested in its prosperity. As to what transpired at the time the trade acceptance was signed by appellant, Mr. Veness testified, referring to the trade acceptance:

"A.   It was given to me to see if I couldn't place it. Q.   By whom was it given to you to place? A.   A. C. Shives. Q.   On behalf of the drawer the Winlock & Toledo Logging & Railroad Company? A. Yes."

Mr. Shives testified concerning this phase of the transaction:

"Q.   Did you give Mr. Veness any instructions as to what he should do about getting the money or what he should do with the money if he got it? A.   No, he just said he thought he could get it there and it would be turned over to us for the logs; that is all there was to it."

The instrument sued upon, as turned over to Mr. Veness by Mr. Shives, read as follows:

"No. 156.   Winlock, Wash.   Date, June 15, 1925. $5,000.00.   On August 14, 1925, Pay to the order of Winlock & Toledo Logging & R. R. Co., Five Thousand and no-100 Dollars.   Value received and charge to the account of

"Winlock & Toledo Log. & R. R. Co.,

"By A. C. Shives.

"To Wm. F. Johnson Mill Co., Winlock, Wash.

"Trade Acceptance.—The obligation of the acceptor of this bill arises out of the purchase of goods from

the drawer.   Upon the acceptor hereof suspending payment, giving a Chattel Mortgage, suffering a fire loss, disposing of his business or failing to meet at maturity any prior trade acceptance, this trade acceptance at the option of the holder, shall immediately become due and payable.''

Across the face is written:

"Accepted June 15, 1925.   Payable at State Bank of Winlock.   Wm. F. Johnson Mill Co.   Clark Lewis, Treas.''

Endorsed:   "Winlock & Toledo Log. & R. R. Co.,
                    "By A. C. Shives.''

Mr. Veness took this instrument to plaintiff and asked him to purchase it for a bank with which plaintiff was then associated.   Plaintiff refused to purchase it for the bank, but stated that he himself had some available funds and that if the trade acceptance was so drawn as to fall due prior to August 1, 1925, he would himself purchase it.   Mr. Veness then took the trade acceptance to the defendant mill company, and endorsements were added thereto as follows:

"The correct maturity date of this acceptance is July 28, 1925, instead of August 14 as shown on its face                       Wm. F. Johnson Mill Co.,
                    "Clark Lewis, Treas.
                    "F. E. Veness Lbr. Co.,
                    "By F. E. Veness.''

Mr. Veness then presented the trade acceptance to plaintiff, who purchased it, the proceeds being delivered to defendant mill company, which paid the money to appellant by its check, receiving credit therefor on its account.   The trade acceptance being unpaid, this action was instituted thereon, resulting in a judgment in favor of plaintiff, from which defendant, Winlock & Toledo Logging & Railroad Company, appeals.

Appellant urges that the judgment should be re-

versed, first, because it contends that the acceleration of the date of maturity was endorsed on the trade acceptance after completion thereof and without its authority and constituted a material variation in the terms of the instrument sufficient to release appellant from liability thereon; and, second, because appellant was only secondarily liable upon the trade acceptance and no notice of dishonor thereof was either pleaded or proven on the trial, or found by the court to have been given.

[1] It may be conceded that, if Mr. Veness was not acting as the agent of appellant in disposing of the trade acceptance, or that if, while representing the appellant, he was a mere messenger for the purpose of carrying the trade acceptance to someone who would purchase it and carrying the money back to appellant, the endorsement accelerating the due date of the trade acceptance having been made without appellant's knowledge, would release appellant from liability on the instrument. A careful reading of the testimony convinces us that Mr. Veness was the agent of appellant for the purpose of negotiating the trade acceptance, and that his authority extended far beyond that of a mere messenger. The whole transaction was manifestly for the sole benefit of appellant; the mill company's indebtedness was not at all reduced thereby; it simply changed creditors to the extent of $5,000, and it does not appear that Mr. Veness had any personal interest in the transaction save in so far as he was a stockholder in a corporation which owned a considerable portion of the capital stock of appellant.

While the testimony as to the circumstances under which the trade acceptance was delivered to Mr. Veness is not of the clearest, we are satisfied that the paper was delivered to Mr. Veness under such circumstances and with such authority as to make him the agent of

appellant for the purpose of discounting the same, and that appellant is bound by his act in procuring the endorsement accelerating the date of maturity. The note was delivered to Mr. Veness by appellant's manager to see if he "couldn't place it." Placing the acceptance was to appellant's advantage; and, in order to place it, it was necessary to advance the date of maturity. Mr. Veness procured the consent of the acceptor to such advancement, and, having done this, accomplished his mission by persuading respondent to discount the paper, the proceeds of which were received by appellant. Whatever the nature of the authority vested in Mr. Veness by appellant, we are satisfied that it was sufficient. *Farmers and Mechanics' Bank, v. Butchers & Drovers' Bank,* 16 N. Y. 125 (133).

[2] In the next place, appellant contends that as it was only secondarily liable upon the trade acceptance, respondent cannot recover in this action, as it neither pleaded nor proved that notice was given to appellant of the dishonor of the acceptance by reason of its non-payment. The testimony shows that the instrument was presented by respondent at the State Bank of Winlock where it was made payable, according to its terms, and that a notary at the bank executed a formal certificate of protest certifying to the fact that the acceptance was presented and not paid. In his certificate, the notary states that he at once mailed notices of the protest to the appellant, the mill company, and to respondent. Respondent, after the case was closed, requested leave to reopen the same and call the notary as a witness on his behalf, which the court allowed; the witness testifying that he mailed a notice of the protest to appellant at its postoffice address. In his complaint respondent alleged the protest of the acceptance, which allegation was specifically denied by appellant.

Appellant contends that, as the complaint did not specifically allege that notice of dishonor of the acceptance by non-payment thereof had been given to appellant, the testimony of the notary to the effect that he had mailed to appellant a notice of the protest of the instrument was improperly received. Appellant argues that a technical protest is not necessary in case of non-payment of an instrument such as is sued on in this case. Assuming that this is true, and that respondent did more than the law required when he formally protested the instrument before a notary public, still under the allegations of his complaint, respondent was entitled to prove what was done; and, in our opinion, the testimony in regard to notice to appellant is sufficient to support the judgment.

Technically speaking, the word "protest" means only the formal declaration of the fact of non-payment executed by the notary public, but, in the common acceptation of the word, it includes "all the steps or acts accompanying the dishonor of a bill or note necessary to charge an endorser." 8 C. J. 622, § 865. Many cases are cited in support of the text quoted from *Corpus Juris*, including the following: The supreme court of Massachusetts, in the case of *Demelman v. Brazier*, 198 Mass. 458, 84 N. E. 856, referring to a declaration in a case where no formal notice of protest was needed to hold the endorsers, which alleged that the note "was duly protested," referred to the use of the word "protest," as used in its popular sense, and as including all the steps necessary to charge an endorser, citing the case of *Coddington v. Davis*, 1 N. Y. 186.

The judgment appealed from is affirmed.

FULLERTON, C. J., TOLMAN, PARKER, and MITCHELL, JJ., concur.