JOHN JAGGER vs. NATIONAL GERMAN-AMERICAN BANK OF ST. PAUL.

Argued May 24, 1893. Decided June 1, 1893.

**Bank's Implied Contract on Taking Paper for Collection.**

When a bank receives commercial paper for collection there is an implied undertaking on its part that, in case of its dishonor, it will take all steps necessary to protect the holder's rights against all previous parties to the paper; and an allegation that the holder instructed the bank to do so only states what the law implies, and changes neither the issues nor the burden of proof.

**Proof of Business Habits of a Witness not Receivable in Corroboration.**

The collection clerk, to whom the paper was delivered, having testified that the holder told him not to protest it in case of nonpayment, and having in corroboration of his testimony introduced the collection book in which he had, at the time, made an entry to that effect, the defendant offered to prove that the clerk was a cautious, careful man, and that this was the only error ever attributed to him. *Held*, that the offered evidence was inadmissible.

**Mere Knowledge is not Notice of Nonpayment to Charge an Indorser.**

Mere knowledge on part of an indorser, derived from the maker, that paper has been dishonored, is not "notice." The notice must come from a party who is entitled to look to him for payment.

Appeal by defendant, the National German-American Bank, from an order of the District Court of Ramsey County, *J. J. Egan*, J., made October 29, 1892, denying its motion for a new trial.

On October 1, 1889, the plaintiff, John Jagger, left with defendant for collection, a note for $700 and interest, made by George S. Acker and indorsed by W. D. Cornish and W. M. Bushnell, due May 10, 1890. When it fell due it was not paid. It was not protested or notice of nonpayment given the indorsers. Acker was insolvent, had no property not exempt from sale on execution. This action is to recover damages for failure to protest and give notice. Defendant claims that when plaintiff left the note for collection, he directed that it should not be protested or notice given in case of nonpayment. Plaintiff had a verdict for $852.49.

· *John B. & E. P. Sanborn,* for appellant.
*C. D. & Thos. D. O'Brien,* for respondent.

MITCHELL, J. This was an action to recover damages for the alleged failure of the defendant to take the necessary steps to fix the liability of the indorsers on a promissory note which plaintiff deposited with it for collection. The allegation of the complaint is that plaintiff delivered the note to the bank for collection, "notifying it to take all necessary steps, in case of nonpayment of the note at maturity, to hold the indorsers upon the same by due notice of nonpayment."

Defendant insists that, having alleged express instructions to the bank, plaintiff was bound to prove it, and could not rest on the undertaking of the bank implied from the mere fact of receiving the paper for collection. There is nothing in this. The complaint alleged nothing more than would have been implied in the absence of any express instructions.

The allegation referred to neither changed the issues nor the burden of proof. The position of counsel is, in effect, that if a party alleges more than is necessary he is bound to prove it.

2. Defendant's collection clerk testified that when plaintiff delivered the note for collection he notified him not to protest it, and in corroboration of this he was allowed to introduce in evidence the collection book, in which he made an entry at the time that the note was not to be protested. It can hardly be necessary to say that it would not have been competent, for any purpose, to prove that this clerk was a cautious, careful man, and this was the only error ever attributed to him. If he committed an error on this occasion the defendant is liable, although it may have been the only mistake he ever made.

Nor would the evidence offered have any legal bearing upon the question at issue, viz. whether the plaintiff gave express instructions not to protest the note.

3. Defendant offered to prove that the maker of the note, at the time it fell due, notified the plaintiff that it would not be paid, and that the latter said "he would carry the note along for a time;" also, that on the day the note fell due, or the day subsequent, the maker notified one of the indorsers of the dishonor of the note.

If this evidence was offered for the purpose of proving that plaintiff had knowledge of the dishonor of the note, and therefore should himself have notified the indorsers, the answer is that he had intrusted that matter to the defendant, and had a right to assume that it would attend to it. If it was offered for the purpose of proving that plaintiff had extended the time of payment to the maker, and thereby himself released the indorsers, it is enough to say that the evidence had no tendency to prove any such extension. And if it was offered for the purpose of proving that the indorsers had notice of the dishonor of the paper, and therefore were not released, the answer is that what was offered to be proved would have been insufficient as notice in respect to both its source and its substance. Mere knowledge of the dishonor of paper is not notice. Notice signifies more. It must come from one who is entitled to look to the party for payment, and must inform him (1) that the note has been duly presented for payment; (2) that it has been dishonored; (3) that the holder looks to him for payment. Although, probably, if the notice comes from the proper party, and contains the first two of these requisites, the third would be implied. The evidence was inadmissible for any purpose.

Order affirmed.

VANDERBURGH, J., absent, took no part.

(Opinion published 55 N. W. Rep. 545.)