**BOVAY v. FULLER et al.**

No. 9566.

Circuit Court of Appeals, Eighth Circuit.

Feb. 4, 1933.

Brothers conducted a similar business at Stuttgart, Ark., under the name of McGill Brothers Rice Mill. A draft in the sum of $3,480 due April 7, 1931, was drawn March 7, 1931, by the Jonesboro Rice Milling Company in favor of itself upon McGill Brothers Rice Mill, and was duly accepted by the McGill Company. The details of the transaction are not in the record. The draft itself shows that it was given for merchandise, presumably rice, purchased by the McGill Company from the Jonesboro Company. The draft was discounted to Fuller Brothers, appellees, and paid for by a check of $3,435.20 to the Jonesboro Company. We set out the draft:

"American Exchange Trust Company 81—1
   "Little Rock, Ark. Date March 7, 1931.
                "$3480.00
"Trade Acceptance
"No. ......
   "Thirty days after date pay to the order of ourselves Thirty Four Hundred Eighty and No/100 Dollars
   "The transaction which gives rise to this instrument is the purchase of goods by the acceptor from the drawer
"To McGill Brothers Rice Mill
   "Stuttgart, Arkansas
"Due April 6th, 1931
     "Jonesboro Rice Milling Co.
     "By Franklin W. Cohen, Treasurer."

Indorsed: "Jonesboro Rice Milling Co. By Franklin W. Cohen, Treasurer. Harry E. Bovay. Accepted 3—7—1931 Payable at American Exchange Trust Company, Little Rock, Arkansas. McGill Brothers Rice Mill. A. U. McGill."

Plaintiffs left the draft with the People's Bank of Stuttgart for collection. Defendant concedes in its brief that on the day it was due it was presented to McGill Brothers, but was not paid.

April 6, 1931, the following letter was sent:

             "Almyra, Ark., Apr. 6—31.
"Jonesboro Rice Mill Co.
   "Jonesboro, Ark.
   "Gentlemen: Attention Mr. Bovay
   "We just returned from Stuttgart and the Peoples National Bank tells us McGill Bros. will be unable to pay the $3480.00 draft of yours we hold for a few days but think they will be able to take it up soon. What shall we do about it?
   "How is rice milling coming by now?
   "Yours truly, Fuller Bros.
                "Per J. L. W."

Wils Davis, of Memphis, Tenn. (George C. Lewis, of Stuttgart, Ark., on the brief), for appellant.

Ingram & Moher, of Stuttgart, Ark., for appellees.

Before KENYON, GARDNER, and SANBORN, Circuit Judges.

KENYON, Circuit Judge.

This case arises out of the following facts: The Jonesboro Rice Milling Company is a corporation engaged in milling rice at Jonesboro, Ark. Appellant Bovay was the president of said company at the time of the occurrences involved in this suit. McGill

This is the letter which is claimed to give notice to Bovay of the failure of McGill Brothers to pay the draft.

This action is to recover the amount of the draft from Bovay as an indorser thereof. The defense is that he never received notice of any presentation to the maker and refusal to pay.

Parties will be designated as in the trial court.

The court submitted to the jury but one question of fact, i. e., whether the letter of April 6, 1931, had been mailed by Fuller Brothers on April 7, 1931, and held that if it had been Bovay had sufficient notice to make him liable as an indorser.

The jury found a verdict for plaintiffs. Instructions were requested by defendant Bovay raising the question that the alleged notice given by the letter of April 6, 1931, was not sufficient as a notice to him. To the rulings of the court refusing to give the same exceptions were taken and proper assignment of error appears. The defendant also objected and excepted to that portion of the court's instructions in which the jury was told that the letter of April 6, 1931, addressed to "Jonesboro Rice Mill Co.," "Attention Harry E. Bovay," was sufficient notice to Bovay. This alleged error is covered by a proper assignment. We think despite some confusion in the record that the controlling question in the case was preserved for the consideration of this court. There is no assignment of error as to the court's refusal to direct a verdict for Bovay, so we do not consider that.

Arkansas has adopted the Uniform Negotiable Instrument Law, and under that defendant Bovay by placing his name upon the instrument otherwise than as maker, drawer, or acceptor, is to be deemed an indorser, unless by appropriate words his intention to be bound in some other capacity was clearly indicated (Crawford & Moses' Dig. § 7829).

Under this law notice of dishonor must be given to the drawer of the negotiable instrument and to each indorser, and any indorser to whom such notice is not given is discharged. This notice may be in writing or oral. Notice to bind parties not partners must be given to each of them (see Crawford & Moses' Dig. §§ 7855, 7862, 7866). Where notice of dishonor is duly addressed and deposited in the mail, the sender is deemed to have given due notice. While some question is raised here as to whether or not Jonesboro, Ark., was a proper place to send the notice, the evidence seems to establish that it was one of the places of business of Bovay, and he had told plaintiffs to write him there. We think there is nothing in the point that the alleged notice was not sent to the proper place. Neither is there any question but that it was mailed in time, accepting the evidence which the jury found true to be so.

The indorser of a negotiable instrument is not a party primarily liable. His liability is conditional and cannot be made absolute unless the conditions are performed. One of the conditions is that the instrument shall be presented to the maker for payment when it is due, and if not paid that notice shall be given to the indorser that presentment has been made and payment refused, unless such notice has been waived. In 3 Ruling Case Law, pp. 1218 and 1219, it is stated: "In no department of the system of law applicable to bills and notes is there required more unyielding compliance with its rigorous demands, than in regard to notice of dishonor. Certain technical rules as to time and manner of serving it have been adopted, and no question with reference to consequent loss or otherwise, or to abstract notions of justice or equity, can be stated with the view to exempt a party from their observance. The requirement is obligatory ordinarily upon all holders, whether natural persons or corporations."

Overnicety as to technical matters should not be permitted to work injustice, but the long-established rules of commercial paper should not lightly be cast aside. The indorser is entitled to notice of dishonor so that he may know his liability and take steps to protect himself as to those who may be liable over to him, although no particular form of notice is necessary.

Two questions of doubt arise in reviewing this record: (a) Was the letter of April 6, 1931, sufficient as a notice of nonpayment to charge Bovay as an indorser had it been addressed directly to him? (b) Was the address, "Jonesboro Rice Mill Co. Jonesboro, Ark. Attention Mr. Bovay," sufficient to bring the situation within that section of the Uniform Negotiable Instrument Law which provides, "Where notice of dishonor is duly addressed and deposited in the post-office, the sender is deemed to have given due notice, notwithstanding any miscarriage in the mails." Section 7871, Crawford & Moses' Digest of the Statutes of Arkansas. This letter would hardly seem to be the kind of a notice of dishonor the holder of a note or draft would give to inform a party that he was expected to pay it as an indorser. It

does not state that the draft had ever been presented and payment refused. It indicates that the bank had told plaintiffs that McGill Brothers could not pay the draft for a few days but that they would soon pay it.

In a later letter to the Jonesboro Rice Milling Company with reference to another trade acceptance on McGill Brothers, plaintiffs speak of McGill Brothers not having been able to take up this draft, and say: "We do not want to call on you for it but we have another deal on and if we should get it through we will ask you to take it up," rather indicating that they had made no demand upon Bovay for payment.

Judge Mitchell of the Supreme Court of Minnesota, in Jagger v. National German-American Bank, 53 Minn. 386, 55 N. W. 545, 546, clearly states the necessities of notice as follows: "Mere knowledge of the dishonor of paper is not notice. Notice signifies more. It must come from one who is entitled to look to the party for payment, and must inform him (1) that the note has been duly presented for payment; (2) that it has been dishonored; (3) that the holder looks to him for payment. Although, probably, if the notice comes from the proper party, and contains the first two of these requisites, the third would be implied."

The rule stated by this court, Nelson v. First Nat. Bank (C. C. A. 8) 69 F. 798, 801, is as follows: "There is no hard and fast rule that requires the notice to state in so many words that the holder looks to the indorser for payment of the note. A notice of dishonor or of protest of the paper from which it may be reasonably inferred that the holder intends to look to the indorser for payment is sufficient notice of that intention, and no other inference could be reasonably drawn from this notice. A notice of nonpayment and protest sent to the indorser by the holder of the note is, by necessary implication, an assertion by the holder of his right to collect of the indorser." Again, in Derham v. Donohue (C. C. A. 8) 155 F. 385, 388, 12 Ann. Cas. 372, Judge Sanborn, speaking for the court, said: "Any notice of protest is sufficient which by express terms or by necessary implication conveys information to the indorser of the identity of the paper and that upon presentment, when due, payment has been neglected or refused. Mistakes and omissions in a notice which obviously could not have misled or prejudiced an indorser are not fatal to it." See, also, 3 R. C. L. p. 1263, § 489; Salomon v. Pfeister & Vogel Leather Co. (N. J. Err. & App.) 31 A. 602; Marshall v. Sonneman, 216 Pa. 65, 64 A. 874.

While we have some doubt as to the sufficiency of the notice to show a presentment of the draft to McGill Brothers and a refusal to pay, and a reliance on the indorsers so to do, in view of the liberal rule laid down by this court as set forth in the two quotations, supra, we would not feel warranted in reversing the judgment on this ground.

The second point is more troublesome. The Uniform Negotiable Instrument Law provides that where notice of dishonor is duly addressed and deposited in a post office the sender is deemed to have given due notice. In other words, there is a conclusive presumption of receipt by the party to whom the notice is *duly addressed.* The same law (Crawford & Moses' Dig. § 7855) provides that where a negotiable instrument has been dishonored by nonpayment the notice of dishonor must be given to the drawer and to each indorser, so the very important query is, whether a letter addressed to "Jonesboro Rice Mill Co. Jonesboro, Ark. Attention Mr. Bovay," is *duly addressed* to the indorser, Bovay. It is true, he was president of the Jonesboro Company, but the company and he were both indorsers, and each was entitled to notice, and there is no presumption as to his receiving the alleged notice unless it was *duly addressed* to him and deposited in the mails. The fact that he was president of the Jonesboro Rice Mill Company does not obviate the necessity of notice to him if he is to be held as an indorser. Notice to the mill company is not notice to him.

2 Joyce on Defenses to Commercial Paper, § 795, p. 1129, states: "The fact that the indorsers of a corporate note are stockholders, directors and officers of the corporation is held not to dispense with the necessity of notifying them, nor to fix their liability as indorsers where they have indorsed individually, and not as officers."

In Murray v. Third Nat. Bank (C. C. A. 6) 234 F. 481, 486, the court said: "The situation bears thus a strong analogy to cases of indorsement of corporate paper by directors, who are usually held not to be primary makers or disentitled to presentment and demand by the mere fact of their interest in the corporation."

In McDonald v. Luckenbach (C. C. A. 3) 170 F. 434, 437: "We think there is no evidence disclosed by the record, tending to show that anything else was contemplated by those who negotiated this loan, than that it

was to be a loan to the corporation for the promotion of its business, for which the corporation was to be primarily bound by the promissory note which it made, and that the directors who loaned their credit by indorsement assumed the secondary liability of indorsers, and none other."

The same question is discussed in Grandison v. Robertson (C. C. A. 2) 231 F. 785. There the president and treasurer of a corporation indorsed the note of the corporation in his individual capacity. It was held that he was entitled to notice. Even where an indorser becomes executor or administrator of the maker he is entitled to have notice that he is looked to personally for payment. Keiser v. Butte Creek Consol. Dredging Co., 48 Cal. App. 38, 191 P. 552; First Nat. Bank of Louisville v. Bickel, 154 Ky. 11, 156 S. W. 856; Phipps v. Harding (C. C. A. 7), 70 F. 468, 30 L. R. A. 513; Century Bank v. Breitbart, 89 Misc. 308, 151 N. Y. S. 588.

■ The presumption that the sender is deemed to have given due notice is limited to those to whom the notice of dishonor is duly addressed. Century Bank v. Breitbart, 89 Misc. 308, 151 N. Y. S. 588. Bovay was entitled to a notice from which he could fairly draw the inference that he was to be held individually. Can it be said that the alleged notice, i. e., the letter of April 6, 1931, was *duly addressed* to Bovay? The record shows other letters from plaintiffs addressed directly to Bovay at Jonesboro, Ark. There is some evidence that Bovay did receive some mail at Jonesboro. If a letter were addressed to Jonesboro Rice Mill Company, attention Mr. Bovay, could it be assumed that the postmaster would place this letter in a private postoffice box of Mr. Bovay if he had one; or would it be delivered to the Jonesboro Rice Mill Company? Certainly notice of suit against the Jonesboro Rice Mill Company on

which was the notation, "Attention Mr. Bovay," would not be notice to Bovay. The very wording of this address would seem to indicate that the matter referred to in the letter was for the company, to be looked after by Mr. Bovay in behalf of the company. Of course, if the notice in fact reached Mr. Bovay the situation would be different. The notice is not addressed to Bovay at all. It is a letter to the mill company informing them of the situation and inquiring what appellees should do about it, and carries no implication of holding Bovay individually liable. Plaintiffs cite no cases that throw any light on this subject. The case of Farmers' Nat. Bank v. Howard, 71 W. Va. 57, 76 S. E. 122, cited by them, is a case where a notice was sent to an indorser of a note, and after his name the word "treasurer" was written. The court held that did not affect the validity of the notice if he was individually bound on the paper, but that is not the case here.

■ An indorser can hardly be said to have had notice as provided by the negotiable instrument act when some other indorser is requested to call his attention to a notice. We are satisfied the alleged notice was not *duly addressed* to Bovay as that term is used in the Uniform Negotiable Instrument Law. There is testimony in the record of Bovay guaranteeing personally the payment of this draft, and counsel for plaintiffs argue in the closing part of their brief that if Bovay was a guarantor no notice was necessary. As the case was tried on the theory that Bovay was an indorser and the question of guarantor is raised here for the first time, we are not at liberty to pass thereon. We are satisfied that on the theory of indorser Bovay cannot be held because he did not have notice of dishonor of the draft. The judgment is reversed and the case is remanded for a new trial.

Reversed and remanded.