## HENRY H. CROSS CO. v. SIMMONS.
### No. 10965.

Circuit Court of Appeals, Eighth Circuit.
April 26, 1938.

Henry S. Yocum and Charles E. Wright, both of El Dorado, Ark. (Neill C. Marsh, Sr., Neill C. Marsh, Jr., and Joe K. Mahony, all of El Dorado, Ark., on the brief), for appellant.

Tom W. Campbell, of Little Rock, Ark. (Frank Pace and Wallace Davis, both of Little Rock, Ark., Bert Steeper, of Kansas City, Mo., and S. E. Gilliam, of El Dorado, Ark., on the brief), for appellee.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

This is an action at law brought by appellee, as administrator of the estate of Charles Austin Soars, deceased, to recover damages for the death of Charles Austin Soars, alleged to have been caused by the negligence of appellant. The parties will be referred to as they appeared below.

The complaint alleges an invitation to the deceased "to come to the plant of the defendant at Smackover, Arkansas, for consultation and advice about certain refining operations and constructions," and that while there as such invitee he received injuries from which he subsequently died. Prior to 1933, the defendant had operated a skimming plant oil refinery at Smackover, Ark., in which crude petroleum was distilled and its products taken off with a minimum of heat and without any pressure. In the spring of 1933, an engineering company under contract with defendant built for defendant a cracking plant, in which heavy petroleum, mainly a residue from the skimming plant, was to be treated under greater heat and pressure to produce additional gasoline. Defendant operates one of two petroleum refineries at Smackover, Ark., the other being known in the record as the Simms refinery.

Soars was a petroleum or refining engineer of experience, residing at Kansas City, Mo., who had been engaged in such work for a number of years. He had been called to Smackover to supervise a new installation in the Simms refinery. In company with R. C. Burns, who was superintendent of the Simms refinery, and C. L. Murphy, superintendent of defendant's refinery, Soars entered defendant's plant, and while he was there a caustic tank containing naphtha exploded, bursting the tank and throwing the naphtha which it contained to such distance as to bring it and its vapors in contact with fire and

flames, causing fire to spread throughout the refinery, enveloping the three men in flames and so severely burning them that they died as the result of their injuries. The administrator of the estate of R. C. Burns, deceased, recovered judgment for damages for his death, which was caused by the same alleged negligence as is here charged, and we affirmed the judgment for plaintiff in the case of Henry W. Cross Company v. Burns, 8 Cir., 81 F.2d 856.

At the close of all the evidence in the instant case, the defendant moved for a directed verdict, which motion was denied, and the case was sent to the jury on instructions to which certain exceptions were saved. The jury returned a verdict for $51,000, upon which judgment was entered. Defendant seeks reversal on the grounds: (1) That the court erred in not directing a verdict for it; (2) that the court erred in refusing to instruct the jury that defendant did not willfully or wantonly injure the deceased; (3) the court erred in admitting and refusing to exclude certain evidence, which is sufficiently preserved in its specification of errors.

The denial of defendant's motion for a directed verdict involves two questions: (1) Was there substantial evidence of negligence on the part of defendant which was the proximate cause of Soars' death; and (2) was there substantial evidence that Soars, at the time of receiving his injuries, was on defendant's premises at its invitation?

In the action in which Burns' administrator recovered damages against defendant for wrongful death, we affirmed the judgment, holding that the evidence as to defendant's negligence and as to whether Burns was an invitee was of such substantial character as to entitle plaintiff to go to the jury on those questions. 8 Cir., 81 F.2d 856, 858.

█ So far as the question of negligence is concerned, the record in the instant case is substantially the same as in the Burns Case. A recital of the testimony bearing upon that issue would seem therefore to be quite unnecessary. Here, as in that case, we think the evidence on this issue was of such substantial character as to entitle plaintiff to go to the jury on it.

The evidence as to whether or not Soars was an invitee, however, differs very materially from the evidence with reference to the status of Burns. First,

it should be noted that plaintiff alleges that Soars had been "invited to come to the plant of the defendant at Smackover, Arkansas, for consultation and advice about certain refining operations and constructions." This is the only allegation with reference to the invitation alleged to have been extended to Soars. The evidence bearing upon this question is substantially as follows: The firm of engineers of which Soars was a member was doing some construction work for the Simms refinery at Smackover. He had never been in defendant's refinery prior to his entry there about 2 o'clock in the afternoon of July 13, 1933, just before the explosion and fire. About 1:30 p. m. on that day, he followed Burns into the office of the Simms refinery just as a Mr. Williamson, an employee of the Simms refinery, was talking on the telephone to Murphy, the superintendent of defendant's refinery. Murphy told Williamson he wanted to speak to Burns, and, when told he was not there, said he wanted to get hold of Burns, that they were not getting along "so good." At this point in the conversation, Burns and Soars walked into the office. Williamson then handed Burns the telephone and Burns talked to Murphy over the telephone. Williamson heard Burns say, "We'll be right over." Following this conversation, Burns and Soars left the office of the Simms refinery together and went in the direction of the defendant's refinery. They appeared at the door of the office of the defendant at about 2 p. m., and stood there while Burns discussed with Cartwright, defendant's office manager, the matter of the delivery of some naphtha, and at the conclusion of that conversation, Murphy appeared. There was some conversation, the character of which is not disclosed, and then Murphy, Burns, and Soars walked away from the office toward defendant's refinery area. Lechtenburg, a witness on behalf of plaintiff, testified that Murphy, Burns, and Soars came through the boiler house where he was working, and passed out through the refinery area, and Murphy remarked, "We are going to look at the cracker," or, "see what is wrong with the cracker," or, as the witness summarized it, "something to that effect." A few moments later the explosion and resulting fire occurred. Soars was badly burned and was taken to a hospital in El Dorado. A nurse assigned to his care testified that she was in attendance on him from about

3 o'clock p. m. to 6:30 p. m. on the afternoon of July 13, 1933, when Soars died; that before his death, and while he was conscious of the fact that he was going to die, he attempted to talk, and inquired for Murphy, and then said: "Well, if it hadn't been for him calling, that he wouldn't have been in that condition," or, "If he hadn't called him, he wouldn't have been in this condition."

This evidence was admitted under the provisions of an Arkansas statute, Acts Ark. 1935, No. 45, p. 90, Pope's Dig. Ark. § 5201, which provides as follows: "In all suits for the recovery of damages for fatal injury or death of any person, *the dying declarations* of the person for whose fatal injury or death such suit has been brought *in respect to the facts or circumstances pertaining to such fatal injury or death* of such person *or the cause thereof* may be proved and admitted in evidence in like manner as dying declarations are now allowed to be proved and admitted in evidence in homicide cases in this State." (Italics supplied.)

There was also evidence introduced by the defendant that Mr. Grogan, the pipe line superintendent of the Simms refinery, had been asked about noon on the day of the accident by Burns to accompany Soars and Burns on a visit to defendant's refinery, but that he had declined to accompany them.

This in substance is the evidence bearing upon the question of the invitation alleged in the complaint to have been extended to Soars.

We are putting aside, for the present, the challenge of the defendant to the admissibility of the testimony relative to the conversation which Burns had over the telephone with Murphy.

█ The statute under which the declaration of deceased was received specifically limits the character of the declarations which shall be received. In the first place, the declarations must be "in respect to the facts or circumstances pertaining to such fatal injury or death." Had the deceased survived, he could have testified to such facts and circumstances, but if he had survived he could not have testified that, "If it hadn't been for him (Murphy) calling, that he wouldn't have been in that condition." That had no bearing either upon the facts or circumstances pertaining to the fatal injury, nor

did it have any bearing upon the cause of it. It was simply the conclusion or opinion of the declarant. Doubtless, it was introduced on the theory that it had a bearing upon whether or not Soars had been invited to defendant's plant, but we think the declaration could not include matters to which the declarant, had he survived, could not have testified. He may have been of the opinion that Murphy's invitation to Burns included him, but there is no basis in the record for such a conclusion. As said by the Supreme Court of Arkansas in Rhea v. State, 104 Ark. 162, 147 S.W. 463, 469: "It is equally well settled that the declarations of the deceased are admissible only as to those things about which he would have been competent to testify if sworn as a witness in the case. They must therefore relate to facts only, and not be mere matters of opinion or belief."

█ Under the facts disclosed here, the declarant was at best giving expression to his conclusion, suspicion, or conjecture as to whether Murphy had included him in the invitation to Burns, and not to any known facts. To let the declaration in as evidence, or to give it probative force, the evidence must show that there was knowledge or the opportunity for knowledge as to the acts or facts that are declared. Wigmore, § 1445(2). We are therefore of the view that this testimony should have been excluded; but on analysis it is clear that it has no probative force, even if the error in admitting it should be disregarded. If any invitation came to Soars, it must have come to him from Murphy through Burns. All that is produced from that conversation is the statement of Burns, "We'll be right over."

█ In Henry W. Cross Co. v. Burns, supra, we said: "An invitation to enter upon property of another may be either express or implied, and the rights of the invitee and the duties of the inviter are the same in either case. The oral testimony, when considered in connection with the surrounding facts and circumstances, tended to prove that Burns was not a trespasser; that he was more than a bare licensee. He entered the premises on the invitation of the person in charge on a mission supposed to be beneficial to the owner."

But the relations existing between Burns and Murphy were very different

from those existing between Murphy and Soars. So far as appears from the testimony, Murphy had never met Soars, and while Williamson, produced as a witness for plaintiff, was present when Burns was talking with Murphy over' the telephone, all of the conversation which he reproduces is included in the words. "We'll be right over." Had Burns said anything to Murphy about Soars, it would seem that Williamson should have heard it. But the statement is entirely consistent with the thought that Burns had in mind taking Williamson or Grogan over with him. It is, of course, not inconsistent with the theory that he had in mind taking Soars with him.

■ To submit to a jury a choice of possibilities is but to permit the jury to conjecture or guess, and where the evidence presents no more than such choice it is not substantial, and where proven facts give equal support to each of two inconsistent inferences, neither of them can be said to be established by substantial evidence and judgment must go against the party upon whom rests the burden of sustaining one of the inferences as against the other. Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 53 S.Ct. 391, 77 L. Ed. 819; Liggett & Meyers Tobacco Co. v. De Parcq, 8 Cir., 66 F.2d 678; Eggen v. United States, 8 Cir., 58 F.2d 616; Fidelity & Deposit Co. v. Grand National Bank, 8 Cir., 69 F.2d 177. The impossibility of proof of material facts, while a misfortune, does not change rules of evidence, but leaves the one having the burden of proof with a claim that is unenforceable. Burnet v. Houston, 283 U.S. 223, 51 S.Ct. 413, 75 L.Ed. 991.

■ The jury would have to infer from the conversation between Burns and Murphy that Murphy asked Soars to come over. As against this there is absolutely no evidence that Murphy knew Soars, or knew that he was in Smackover at the time. Soars lived in Kansas City, Mo. Murphy was looking for and wanted Burns. There is some evidence introduced by the defendant that Soars wanted to see the defendant's refinery. The remarks of Murphy to Lechtenburg do not indicate that an invitation had been extended to Soars or that he was any more than a curious visitor for his own benefit and pleasure. If the jury might properly have considered the dying declaration, they might, by conjecture, have construed it to mean that Soars went over to defendant's plant because Murphy asked him over, but they might equally, and, we think, with more reason, have inferred that he went along with Burns without invitation, hoping to see the plant. One who accompanies an invitee to the premises of another for his own pleasure or for his own purpose is not an invitee. Rhode v. Duff, 8 Cir., 208 F. 115; Morse v. Sinclair Automobile Service Corp., 5 Cir., 86 F.2d 298.

■ As has been observed, the only invitation alleged in the complaint is an invitation "for consultation and advice about certain refining operations and constructions." If he were there for any other purpose than that alleged in the complaint, that would not warrant a recovery in this action. But it is argued that, even if Soars were a bare licensee, there might still be a recovery because it is said defendant's negligence was "active." But the case was not tried on that theory below, and, hence, it cannot be urged here. Bovay v. Fuller, 8 Cir., 63 F.2d 280. The so-called active negligence was not pleaded, and the case was submitted to the jury in response to the issues made by the pleadings upon the theory that Soars was an invitee. In effect the jury was instructed that, if Soars were not an invitee, they should find for the defendant.

■ As the case must be reversed and remanded for a new trial, we should perhaps say something more with reference to this contention made in this court but not urged below. The negligence here complained of is the closing of a valve while a pump was pumping naphtha into the tank which exploded. This valve, if it were closed at all, was closed an hour or two before Soars entered the plant. There was no act performed after he entered the plant which increased the hazard, except perhaps the failure of defendant to stop the pump, which we think would be an act of omission rather than an act of commission.

On this phase of the case, we conclude that the court committed error in not granting defendant's motion for a directed verdict.

■ It is next urged that the court erred in refusing to instruct the jury in effect that "the defendant did not wilfully

or wantonly injure the deceased." There was no evidence to sustain such a contention, but no such contention was made by the plaintiff, and, while we think the instruction might well have been given so that it would be clear that there could be no recovery if Soars were a mere licensee, the other instructions in substance told the jury that, unless he were an invitee, no recovery could be had, so that a refusal to give this requested instruction could not have been prejudicial.

Complaint is made with reference to the ruling of the court in admitting evidence of the dying declaration of Soars. We have already adverted to this, and we think the objection to that testimony should have been sustained.

It is also contended that the testimony of the witness Williamson, who heard Burns say to Murphy on the telephone, "We'll be right over," was inadmissible because hearsay. Both Burns and Murphy were dead. There was testimony by Williamson that Murphy had called for Burns over the telephone and had said in effect that they were having trouble with the plant, and it seems clear that he wished at least to talk with Burns about it. While Murphy was still on the line, Williamson advised him that Burns had come in, and he thereupon turned the receiver over to him. The fact that Burns was heard to say in his telephone conversation with Murphy, "We'll be right over," was in effect a statement made to Murphy, defendant's superintendent. The fact that he made it was material, and, we think, under the circumstances, competent. It was verbal conduct in which the defendant, through Murphy, participated. While we think it was not sufficient to show an invitation to Soars, it was properly admitted as a circumstance, which, had it been properly connected up, might have warranted such a finding by the jury.

The other contentions of appellant with reference to the rulings of the court on the admissibility of evidence do not impress us as being of controlling importance, and, as the same questions may not arise on a retrial of the case, we pretermit any discussion of them.

The judgment appealed from must therefore be reversed, and the cause is remanded to the lower court, with directions to grant the defendant a new trial.